# FAIR HAVEN AND WESTVILLE RAILROAD COMPANY *v.* NEW HAVEN.

ERROR TO THE SUPREME COURT OF ERRORS OF THE STATE OF CONNECTICUT.

No. 84.   Argued November 5, 6, 1906.—Decided December 3, 1906.

A general law requiring street railways to keep a certain space between and outside their tracks paved and repaved and assessing them therefor amounts, in respect to companies whose charters contain other provisions, to an amendment thereof, and as such a purpose is consistent with the object of the grant it falls within the reserved power of the State to alter, amend or repeal the original charter, and if imposed in good faith and not in sheer oppression the act is not void either as depriving the company of its property without due process of law or as impairing the contract obligations of the original grant.   So held as to law of 1899 of Connecticut.

One of the public rights of great extent of the State is the establishment, maintenance and care of its highways.   *West Chicago Railway* v. *Chicago*, 201 U. S. 506.

77 Connecticut, 677, affirmed.

THE facts are stated in the opinion.

Mr. *George D. Watrous* and Mr. *Talcott H. Russell* for plaintiff in error:

The act of 1895 so far as affects the plaintiff cannot be sustained as an exercise of the police power.   It is not in fact an exercise of the police power, but an attempt to exercise the revenue power.   Cooley's Const. Lim., 6th ed., 704; 4th ed., 719; Freund, Police Power, § 3; *Rochester Turnpike Co.* v. *Joel*, 41 App. Div. (N. Y.) 43; Potter's Dwarris, 458.

The taxing power is a separate and distinct power from the police power.

Whether the railroad paid these assessments or not did not affect in any way the object sought by the police power.   The act is plainly an example of that class of acts by which it has been attempted to exercise the power of special assessment

by fixed rules in order to avoid inquiry in reference to the benefits in each case; the same class of acts which have repeatedly come before this court, and particularly in the case of *Norwood* v. *Baker*, 172 U. S. 269. Dillon on Mun. Corp., § 752.

The act of 1899 repealed the act of 1895.

Neither the act of 1895 nor that of 1899 can be upheld under the reserved power of amendment. The legislature cannot take property under guise of the power of repeal and amendment. *Inland Fisheries Co.* v. *Holyoke Water Co.*, 104 Massachusetts, 446; *Holyoke* v. *Lyman*, 15 Wall. 500; *Railway Co.* v. *Bristol*, 151 U. S. 556, do not support the opinion below. See *Railway Co.* v. *Smith*, 173 U. S. 684; *New York* v. *O'Brien*, 111 N. Y. 1; *State* v. *Haun*, 61 Kansas, 146.

An obligation to keep in repair does not include an obligation to repave.

*Mr. Leonard M. Daggett* and *Mr. E. P. Arvine* for defendant in error:

The assessment directed by the act of 1895, treated as an assessment of benefits, is not a taking of property without compensation or without due process of law. *French* v. *The Barber Asphalt Co.*, 181 U. S. 324; *Brown* v. *Drain*, 112 Fed. Rep. 582; *Davidson* v. *New Orleans*, 96 U. S. 97; *Scott* v. *Pitt*, 169 N. Y. 521.

The Special Law of 1895 was an amendment of the plaintiff's charter.

This has been held by the Supreme Court of Connecticut in this case, interpreting Connecticut legislation and it should not now be questioned in this court. *Bulkley* v. *N. Y., N. H. & H. R. R. Co.*, 27 Connecticut, 479; *N. Y. & N. E. R. R. Co.* v. *Waterbury*, 60 Connecticut, 1; *N. Y. & N. E. R. R. Co.'s Appeal*, 62 Connecticut, 527, 538; *English* v. *N. Y., N. H. & H. R. R. Co.*, 32 Connecticut, 243.

The power of amendment cannot be restricted to such measures as might be justified also as an exercise of the police

power.   The police power may be exercised in derogation of rights claimed by contract.   The power of amendment covers acts which are not an excrcise of the police power; otherwise the power of amendment is ineffective.

While the power of amendment is not without some restriction, and may not be exercised to impair the obligation of a contract made by the company pursuant to its charter rights that it was designed to enable the State to change the obligation of its contract, that is the terms of the corporate charter.   This certainly may be done by a legislative measure, passed in good faith, consistent with the scope and object of the act of incorporation and respecting vested rights of property.   *Stanislaus County* v. *San Joaquin Canal Co.*, 192 U. S. 201; *Sioux City Ry. Co.* v. *Sioux City*, 138 U. S. 98; *N. Y. & N. E. R. R. Co.* v. *Bristol*, 151 U. S. 567; *Spring Valley Water Works* v. *Schottler*, 110 U. S. 347; *Pennsylvania College Cases*, 13 Wall. 190; *Tomlinson* v. *Jessup*, 15 Wall. 454; 1 Morawetz, Corporations, §§ 1093 *et seq.*

That the act of 1895 was a valid exercise of the police power is shown by the authorities cited in the opinion of the Supreme Court of Connecticut in this case.

It is not necessary to determine whether the act of 1895 should be regarded as an act authorizing an assessment of benefits, that is of taxation, or one imposing a new condition on the original grant.   *Lincoln St. Ry. Co.* v. *Lincoln*, 84 N. W. Rep. 802.

MR. JUSTICE MCKENNA delivered the opinion of the court.

This case involves the validity of an assessment of $36,879, against plaintiff in error, for the cost of paving between its tracks and for one foot on each side thereof.   Plaintiff in error operates a double track electric railway through West Chapel street in New Haven.

In pursuance of certain laws of the State the court of common council, through a contractor, caused the street to be

paved with sheet asphalt. The work was begun in June, 1897, and completed in October or November of the same year. The city paid for the work, and, as provided by the statutes, assessed against plaintiff in error its proportion of the cost, to wit, $36,879. On appeal to the Superior Court for New Haven County, that court reduced the assessment to $5,823, and entered judgment against plaintiff in error for that sum.

The learned judge of the Superior Court expressed the contentions of the parties and his conclusions as follows:

"It is contended by the defendant that the assessment against the plaintiff is legal and valid under the act of 1895: Charter of New Haven, page 80.

"It is contended by the plaintiff that the act of 1895 is repealed by the act of 1899, Special Laws of 1899, p. 181; and if it is not repealed, the act of 1895 is unconstitutional and void.

"Inasmuch as I hold and rule that the act of 1895 is repealed by the act of 1899, it is unnecessary to pass upon the constitutionality of the former. The intention and effect of the latter act is to repeal the former. The last act covers the whole subject-matter of assessments for benefits and damages arising from paved streets, and provides expressly for the assessments of benefits and damages for pavements already constructed in West Chapel street.

"This conclusion entitles the plaintiff to relief from the assessment as laid by the amendment to the report of the bureau of compensation; and it is, therefore, ordered that the assessment be reduced to the sum of $5,823, as recommended by the bureau of compensation."

And the judgment of the Superior Court recited:

"The asphalt pavement in said street is not a direct benefit to the plaintiff or its property, but on the other hand is a direct damage to the plaintiff and its property, inasmuch as it largely increases the expense of repairing the roadway between the rails, and of general repairs to the track, ties, and structure of the railroad. The only benefit to the railroad is such as

results from the general improvement to the locality by reason
of such pavement tending to increase the population and traffic
in that section of the city. Such benefit does not exceed the
amount of $5,823."

Upon the appeal of the city the judgment was reversed by
the Supreme Court of Errors. 75 Connecticut, 442. On the
return of the case to the Superior Court that court rendered
judgment dismissing the application of plaintiff in error, and
confirming and establishing the assessment of $36,879. The
judgment was reversed by the Supreme Court of Errors and
the case remanded to the Superior Court, with directions to
deduct from the assessment the cost of repair. In accordance
with this direction the Superior Court deducted from the
assessment the sum of. $3,590.85, and confirmed the assess-
ment less such deduction. This judgment was affirmed by the
Supreme Court of Errors.

The statutes under which the street was paved and the assess-
ment against plaintiff in error was made may be summarized
as follows: Section 9 of the charter of plaintiff in error au-
thorized the common council of the city to establish such
regulations in regard to the railway as might be required for
"paving . . . in and along the streets," and the com-
pany was required to conform to the grades then existing or
thereafter established. And it was provided that the com-
pany should "keep that portion .of the streets and avenues.
over which their road or way shall be laid down, with a space
of two feet on each side of the track or way, in good and suffi-
cient repair, without expense to the city or town of New
Haven, or the owners of land adjoining said track or way."

It was provided (section 13) that the act might be altered,
amended or repealed at the pleasure of the general assembly.

The charter was amended July 9, 1864, and the company
was authorized to lay down its tracks and run its cars through
Chapel street, subject to the .prohibitions of the ninth section
of its original charter.

In 1893 a general law was passed applicable to all railways,

by section 6 of which it was provided that every street railway was required to keep so much of the street or highway as is included within its tracks, and a space of two feet on the outer side of the outer rails, in repair, to the satisfaction of the authorities of the city, town or borough, which was bound by law to maintain such street or highway. More expensive material, however, was not to be required than that used on the other parts of the street, except, however, for a space of one foot on each side of each rail, unless a more expensive kind of material was required in the order permitting the original location of such railway. If the railway company did not make such repairs after notice, it was provided that the city might do so, and recover the expense thereof from the company. And it was provided that the act should be deemed an amendment to the charters of all existing railway companies.

On July 1, 1895, an act was passed authorizing and empowering the court of common council of the city to issue bonds for the construction of permanent pavements, and providing that all pavements laid by authority of the act should be laid upon the grade of the street, and the city was empowered to collect the cost thereof from the owners of abutting land. The act contained the following provisions as to railways:

"On all streets occupied by the track, or tracks, of any railway company, or companies, said company or companies shall be assessed and shall severally pay to the city the cost of paving and repaving the full length, and nine feet wide for each and every line of track of such railway or railways, now existing, or that may hereafter be laid in any street of said city."

By supplement to this act, passed in March, 1897, it was provided that in estimating the cost of each square yard to be assessed the entire cost of laying the pavement and the agreement to keep the pavement in repair for a period not exceeding fifteen years should be considered.

An act passed April 28, 1899, provided for an assessment

upon the "grand list" one mill on the dollar for the paving of streets, to be expended only for the original construction of pavements. There was a provision for the laying of benefits and damages, and a specification of limits of the assessment varying with the kind of material used for paving. Assessment of benefits and damages for the pavement on certain streets and on West Chapel street were required to be laid in accordance with the provision of the act. Any one aggrieved by the assessment was given the right of appeal to the Superior Court. The act was declared to be an amendment to the charter of the city, and acts inconsistent therewith were repealed. The liability of street railway companies under the general laws was preserved.

The statutes and the assessments made under them are attacked by plaintiff in error as repugnant to the contract clause of the Constitution of the United States and the Fourteenth Amendment.

1. The contention that the assessment was unconstitutional, even though the act of 1895 is constitutional, was commented on by the Supreme Court of Errors on the second appeal as follows:

"Other claims new to the case are made, to the general effect that as the street had been paved twenty-three years before and the plaintiff had been assessed a portion of the cost thereof, and especially as the city had not shown the need of the new pavement as a means of repair, an unconstitutional use of the act would result if the present charge against the plaintiff was ,enforced. These claims have no foundation either in the application or pleadings and, therefore, have no standing in the case. We do not hesitate to say, however, without discussion, that in view of the pleadings, which did not put the plaintiff to the proof of the necessity of the new work as a means of repair and proper maintenance of the street, the facts indicated could not be held sufficient to accomplish the results claimed for them."

Plaintiff in error contests this conclusion of the court, and

insists that the claims were made on the first appeal of the case and were overlooked by the court. It is questionable whether we may dispute the ruling of the Supreme Court of Errors as to what the record in the case before it showed. But, granting we have such power, the record does not justify the assertion of plaintiff in error. A bill of exceptions was tendered by plaintiff in error to the Superior Court of certain claims, and requests for rulings made by plaintiff in error, so that the questions arising thereon could be considered by the Supreme Court of Errors in connection with those by the appeal of the city, and one of the claims was "that the re-pavement, if required at all, could only be required when it was found to be a satisfactory, or the most satisfactory, method of repair, which did not appear in this case."

The bill of exceptions stated also that the court did not rule upon the requests, because it was of opinion that the act of 1895, so far as it affects the pavement in question, was repealed by the act of 1899, "and therefore decided against said requests." The court allowed the bill of exceptions, and expressed the reason as follows: "Being of the opinion that some, at least, of the questions arising upon the above bill of exceptions will arise again, if a new trial of this cause should be had, the above bill of exceptions is hereby allowed, and or-dered to be made a part of the record."

But this does not militate with the ruling of the Supreme Court of Errors nor indicate that the court did not consider the claims and requests of plaintiff in error. The ruling was based upon the application or pleadings, and it is not con-tended that the court's view of the application or pleadings was erroneous. Indeed, on the return of the case to the Superior Court an application was made by plaintiff in error for leave to amend its application by adding six paragraphs, setting out the grounds indicated above and other grounds why the assessment was an unconstitutional exercise of the authority in terms conferred by the act of 1895. The motion was denied on the ground (1) that the court had no power to

allow the amendment, and (2) that the amendment ought
not as a matter of discretion to be allowed.   The ruling was
affirmed by the Supreme Court of Errors.   Justifying its rul-
ing, the court denied that it thereby enforced a stringent rule
of pleading, but said it enforced only the familiar one which
confined the evidence to the matters pleaded, and that it was
the duty of plaintiff in error to have made its application full
enough to cover all the claims desired to be made.

(2) It will be observed that the Superior Court ruled that
the act of 1895 was repealed by the act of 1899, and that the
latter act covered the whole subject-matter of assessment for
benefits and damages accruing from paved streets, and pro-
vided expressly for the assessments of benefits and damages
for pavements which had been constructed on West Chapel
street.   The Supreme Court of Errors reversed the ruling and
sustained the contention of the city that the assessment should
be made under the act of 1895.   The court said: "The differ-
ence of view explains the situation disclosed by the case.   The
city bases its claim to the larger sum assessed by it upon the
rule of recovery laid down in the act of 1895; the railway
company claims to limit its liability at least to the smaller
sum assessed by the court upon the strength of the rule of
assessment prescribed in the act of 1899, as interpreted by the
court and accepted by the company."   And after the con-
struction and discussion of the provision of the two acts the
court said: "The situation is, we think, susceptible of a simple
explanation.   The act of 1899 is to be taken in its natural
meaning.   Its provisions relating to assessment were intended
to deal only with assessments of benefits and damages in favor
of or against owners of land whose land adjoins the street in
which the pavement is laid, by reason of some benefit or
damage received affecting its value.   The railway companies
were not meant to be and are not to be regarded as within
their scope.   No change in the burden already upon them
for the completed work was intended to be effected."

So deciding between the statutes, the court adjudged that

the act of 1895 was constitutional, on the ground that it was a proper exercise of the police power of the State, and on the ground that the act was an exertion of the power reserved by the State of altering, amending or repealing the charter of the railway company. If either ground is tenable the judgment must be affirmed. We will place our decision on the second ground, as being of more local character, and because the exercise of the power expressed only comes under our review in its excesses.

We accept the decision of the Supreme Court of Errors, that the statutes were intended as an exercise of the power of amendment reserved by the State, although plaintiff in error contends that such was not their intention. The court treated the question involved as primarily one on statutory construction, and "best approached," to use the language of the court, "by an examination of the statutory situation," and upon that examination pronounced its conclusion that "the act of 1895 was in effect an amendment of the plaintiff's charter," citing *Bulkley* v. *New York & New Haven R. R. Co.*, 27 Connecticut, 479; *New York &. New England R. R. Co.* v. *Waterbury*, 60 Connecticut, 1. Was such an amendment in excess of the power of the State? The limitation upon the power of amendment of charters of corporations has been defined by this court several times. It is said in one case that such power may be exercised to make any alteration or amendment in a charter granted that will not defeat or substantially impair the object of the grant or any rights which have vested under it, which the legislature may deem necessary to secure either the object of the grant or any other public right not expressly granted away by the charter. *Holyoke* v. *Lyman*, 15 Wall. 500, 522. In another case it was said that the "alterations must be reasonable; they must be made in good faith, and be consistent with the scope and object of the act of incorporation. Sheer oppression and wrong cannot be inflicted under the guise of amendment or alteration." *Shields* v. *Ohio*, 95 U. S. 319, 324. Later cases have repeated these definitions.

*Sinking Fund Cases,* 99 U. S. 700, 720; *Greenwood* v. *Freight Co.,* 105 U. S. 13; *Close* v. *Glenwood Cemetery,* 107 U. S. 476. In the *Sinking Fund Cases,* it was said that whatever regulations of a corporation could have been inserted in its charter can be added by amendment.   All the cases are reviewed and their principles affirmed in *Stanislaus County* v. *San Joaquin C. & I. Co.,* 192 U. S. 201, and water rates fixed by the board of supervisors of the county of Stanislaus under a law of the State, sustained through the income of the company, were reduced from one and a half per cent per month to six per cent per annum.

In the light of these cases let us examine what the statutes of Connecticut require of plaintiff in error.   By its original charter (1862) plaintiff in error was required to keep the street between its tracks, with a space of two feet on each side of the tracks, in good and sufficient repair.   In the amendment of the charter in 1864 this obligation was retained, and also in the public acts of 1893.   In the act of 1895 the duty of paving and repairing was imposed on all railway companies.   We shall assume, for the purpose of our discussion, that the duty to repair did not include the duty to pave and repave, although much can be said and cases can be cited against the assumption. Does the change and increase of burden upon the plaintiff in error come within the limitations upon the reserved power of the State?   Has it no proper relation to the objects of the grant to the company or any of the public rights of the State?   Can it be said to be exercised in mere oppression and wrong?   All of these questions must be answered in the negative.   The company was given the right to occupy the streets.   It exercised this right first with a single track, and afterwards with a double track.   Before granting this right the State certainly could have, and reasonably could have, put upon the company the duty of paving as well as of repairing   Such requirement would have been consistent with the object of the grant.   It is yet consistent with the object of the grant.   It is not imposed in sheer oppression and wrong and the good faith of the

State cannot be questioned. It is imposed in the exercise of one of the public rights of the State, the establishment, main-tenance and care of its highways. The extent of this right is illustrated by *West Chicago Railroad Co.* v. *Chicago*, 201 U. S. 506, and cases cited.

*Judgment affirmed.*