ARTHUR B. POWERS, COMMISSIONER OF TRANSPORTATION, ET AL. *v.* JOSEPH R. ULICHNY

BOGDANSKI, C. J., PETERS, HEALEY, PARSKEY and ARMENTANO, Js.

Argued May 14—decision released August 4, 1981

*Robert M. Davidson,* for the appellant (defendant).

---

*William A. McQueeney,* assistant attorney general, with whom, on the brief, was *Carl R. Ajello,* attorney general, for the appellee (named plaintiff).

*Louis Stein,* for the appellee (plaintiff city of Bridgeport).

BOGDANSKI, C. J. In August, 1979, the defendant applied for a permit to add a second story to his restaurant. The proposed addition would intrude into the approach zone of runway 11-29 at Sikorsky Memorial Airport, which is owned and operated by the city of Bridgeport but located wholly within the town of Stratford. The Stratford town attorney notified the named plaintiff (commissioner) of the defendant's application. The commissioner objected that allowing the proposed construction would endanger air safety. The town attorney replied that he found no legal justification to refuse the application. The defendant was issued a building permit. Midway through construction, the commissioner obtained an ex parte temporary injunction prohibiting the defendant from increasing the height of the restaurant.

The commissioner sought a permanent injunction. In his complaint the commissioner alleged that the addition would constitute an airport hazard as defined in General Statutes §§ 15-34 (8)[1] and 15-88 (b), and that this addition would be in violation of § 15-41-31 (d)[2] of the Regulations of Connecticut State Agencies. The city of Bridgeport

---

[1] " 'Airport hazard' means any structure, object of natural growth or use of land which obstructs the air space required for the flight of aircraft in landing or taking off at any airport or restricted landing area or is otherwise hazardous to such landing or taking-off." General Statutes § 15-34(8).

[2] See text, infra.

intervened as a plaintiff. From a judgment granting the permanent injunction, the defendant has appealed.

The trial court found that the plaintiffs had established irreparable injury and the absence of an adequate remedy at law. The court further found that the defendant has not established a "taking" of his property without just compensation in violation of the Connecticut and United States constitutions.

The first issue is whether the plaintiffs are barred from seeking an injunction because of their failure to exhaust administrative remedies. The State Building Code provides, in part: "When a person other than such owner claims to be aggrieved by any decision of the building official, such person or his authorized agent may appeal, in writing, from the decision of the building officials to the board of appeals . . . ." General Statutes § 19-402.

Where a party has a right of appeal from a decision of an administrative agency, he may not instead bring an independent action to test the very issue which the appeal was designed to test. *Country Lands, Inc.* v. *Swinnerton,* 151 Conn. 27, 33, 193 A.2d 483 (1963). A party, however, need not exhaust an administrative remedy that would be inadequate. *Bianco* v. *Darien,* 157 Conn. 548, 554, 254 A.2d 898 (1969). The trial court found, and we agree, that a municipal board of appeals is ill-equipped to decide the issues involved in the complex statutory scheme governing aeronautics. See *Aaron* v. *Conservation Commission,* 178 Conn. 173, 178, 422 A.2d 290 (1979).

A court may not grant an injunction unless the complainant's right is clear. See 42 Am. Jur. 2d,

Injunctions § 28. Under the present circumstances we conclude that the plaintiffs are not entitled to have the defendant permanently enjoined from erecting an addition to his restaurant.

We note that there are no airport zoning ordinances involved in this case. Sections 15-88 through 15-97 of the General Statutes set forth a scheme authorizing zoning to regulate airport hazards. Section 15-91 (e) provides: "If any municipality fails to adopt airport zoning regulations within a reasonable time, the commissioner may, for the protection of public safey, adopt and from time to time as may be necessary amend or repeal such regulations for such municipality until airport zoning regulations herein provided for are adopted by such municipality." The statutes do not require the commissioner to adopt airport zoning ordinances. Neither the commissioner, nor the town of Stratford, has adopted such ordinances.[3] Therefore the plaintiffs cannot invoke §§ 15-88 through 15-97 to support their action for an injunction.

The commissioner next contends that §§ 15-44 and 15-74, which are part of chapter 266, authorize the injunction. Section 15-44 provides: "The commissioner and aeronautics inspectors of the department, and each state, county and municipal officer charged with the enforcement of state and municipal laws shall enforce and assist in the enforcement

---

[3] The validity of airport zoning ordinances is discussed in Bohannon, "Airport Easements," 54 Va. L. Rev. 355 (1968); Lesser, "The Dilemma of Airport Zoning - The Constitutionality of Police Power Regulation v. The Necessity of Eminent Domain Acquisition," 1973 Institute on Plan., Zoning, and Eminent Domain 117; comment, "Airport Approach Zoning: Ad Coelum Rejuvenated," 12 U.C.L.A. L. Rev. 1451 (1965); and comment, "The Validity of Airport Zoning Ordinances," 1965 Duke L.J. 792 (1965).

of this chapter and of all regulations made pursuant thereto, and of all other laws of this state relating to aeronautics." The only regulation which the commissioner relies upon is § 15-41-31 (d), concerning standards for commercial airports, which provides: "Approach standards. The entire landing area shall be suitable for safe operations of aircraft under normal wind conditions. The landing area shall have approaches to all landing strips permitting a glide ratio of at least twenty to one and a transitional surface of at least seven to one." Regs., Conn. State Agencies § 15-41-31 (d). That section defines the minimum standards for commercial airport design and layout. Nothing in the regulation, however, restricts the rights of an adjacent landowner, or specifies the manner in which the airport is to secure safe approaches. For that, we must turn to the rest of the aeronautics statutes.

The aeronautics laws, in addition to chapter 266 (title 15), include §§ 13b-39 through 13b-50 of chapter 242. Chapter 242 is the Transportation Act. We make every effort to construe a statutory scheme as a consistent whole. *Rustici* v. *Stonington,* 174 Conn. 10, 13, 381 A.2d 532 (1977). Section 15-73,[4] dealing with airport protection privileges,

---

[4] "[General Statutes] Sec. 15-73. AIRPORT PROTECTION PRIVILEGES. ENCROACHMENTS PROHIBITED. STANDARDS FOR DETERMINING NECESSITY OF TAKING LAND. Where necessary in order to provide unobstructed air space for the landing and taking-off of aircaft, in case of airports and restricted landing areas acquired or operated by the state, the commissioner, and, in case of municipal airports, the municipality, is granted authority to acquire, in the same manner as is provided for the acquisition of property for airport purposes, easements through or other interests in air space over land or water, interests in airport hazards outside the boundaries of the airports or restricted landing areas, and such other airport protection privileges as are necessary to insure safe approaches to the landing areas of such airports and restricted landing areas and the safe and efficient operation thereof.

states that where it is necessary in order to provide unobstructed airspace for landing or taking off at an airport, the commissioner for a state airport, or the municipality for a municipal airport, can acquire interests in airport hazards "in the same manner as is provided for the acquisition of property for airport purposes . . . ."

Sikorsky Memorial Airport is a municipal airport owned by the city of Bridgeport. In the case of municipal airports General Statutes § 15-73 grants to the plaintiff municipality, the city of Bridgeport, the power to acquire easements in airspace. The sections that govern the procedures for the acquisition of property for airport purposes are contained in §§ 13b-39 through 13b-50 of the Transportation Act. The city of Bridgeport must comply with § 13b-43.[5] Under § 13b-43, Bridgeport

He is empowered to acquire in the same manner the right of easement for a term of years or perpetually to place or maintain suitable marks for the daytime marking and suitable lights for the nighttime marking of airport hazards for the purpose of maintaining and repairing such lights and marks. No person shall build, rebuild or create or cause to be built, rebuilt or created any object, or plant, cause to be planted or permit to grow higher any tree or trees or other vegetation, which encroach upon any airport protection privileges acquired pursuant to the provisions of this section. Any such encroachment is declared to be a public nuisance and may be abated in the manner prescribed by law for the abatement of public nuisances, or the municipality in charge of the airport or restricted landing area for which airport protection privileges have been acquired as provided in this section may go upon the land of others and remove any such encroachment without being liable for damages in so doing. Before exercising any of the powers conferred herein, the commissioner shall establish and publish in detailed form, available to the public, the standards which he has adopted and will apply in making his determination that public convenience and necessity require the taking of any parcel of land or interest therein."

[5] "[General Statutes] Sec. 13b-43. MUNICIPAL AIRPORTS. Any municipality, or any two or more municipalities jointly, may establish, maintain and operate an airport at any location within the state approved by the commissioner and by the municipality or munici-

must obtain the approval of the town of Stratford, and pay the defendant just compensation for the interest taken. It has not done so. Sections 15-73 and 13b-43 provide a vehicle for a municipality to acquire interests in airport hazards to ensure the safe and efficient operation of an airport. The legislature, when it enacted § 15-73, explicitly granted the commissioner this power for airports acquired or operated by the state.

Section 15-74 provides, in part: "The commissioner shall cause notice to be given to the owner or person responsible for the existence of any obstacle so located as to constitute a hazard to aerial navig-

palities within which such airport is to be established, and may take any land or interest therein necessary for such establishment at such location upon paying just compensation to the owner of such land or interest therein. The approval of the municipality shall be by vote of a town or borough and by vote of the city council of a city. Any municipality, or any two or more municipalites jointly, may expand or improve an airport, and may take any land or interest therein necessary for such expansion or improvement when, in the opinion of the commissioner, public convenience or safety requires, and when the approval of the municipality or municipalities in which such land is located has been legally obtained, upon paying just compensation to the owner of such land or interest therein. In case such municipality or municipalities cannot agree with such owner upon the amount of such compensation, the amount shall be determined in the manner prescribed in section 48-12. An appeal from the amount so determined shall not act as a stay of the taking of such land, provided no facility or land or interest therein held by a public service company for service to the public shall be so taken or removed unless, at the expense of the party seeking such taking or removal, an adequate and equal substitute approved by the division of public utility control within the department of business regulation shall first be provided."

The trial court held that §§ 15-73 and 13b-43 only apply if the plaintiffs' acts amount to a "taking" in the constitutional sense. We reject this approach. The legislature has set forth a scheme requiring compensation whether or not the acts of the state or municipality amount to a constitutional "taking."

The predecessor to §§ 13b-43 and 13b-44 was § 15-79. Section 15-79, until it was repealed, provided a similar scheme of airport

ation or to the efficient or safe use of any airport, requiring such owner or other person to remove such obstacle within such reasonable time as is fixed by said commissioner. The owner or owners of such airport shall pay to the owner of such obstacle just compensation for such removal . . . ." This section grants the commissioner the power to compel removal of hazards for municipal as well as state acquired or operated airports. It does not, however, explicitly contain many of the procedures found in other sections dealing with the acquisition of interests in airport hazards. For example, in contrast to § 13b-43, it does not explicitly require the approval

---

expansion and improvement for both state and municipal airports. The present statutes treat expansion of airports by municipalities and by the state differently. Section 13b-43 applies to municipalities while § 13b-44 applies to the state. General Statutes § 13b-44 provides: "ESTABLISHMENT AND MAINTENANCE OF STATE AIRPORTS. (a) The state may establish, maintain and operate, and may expand, an airport at any location within the state in the following manner. The commissioner shall conduct and complete a study of the adequacy of existing airports, which study may be based upon the study authorized under section 13b-16, and shall determine the necessity for the establishment of additional airports or the expansion of existing airports. The commissioner shall, within one year of the completion of such study, formulate and adopt a plan of development which shall incorporate the findings of such study, showing the necessity for such establishment or expansion, in a manner consistent with the comprehensive long-range master transportation plan. The plan of development shall specify the lands or interests therein the acquisition of which the commissioner deems necessary for such establishment or expansion and a copy of such plan of development shall be filed in the office of the town clerk of each municipality in which such establishment or expansion is proposed.

"(b) The commissioner shall cause a public hearing to be held at the expense of the department in each municipality in which such lands or interests therein are located. At such hearing the commissioner shall present and explain the plan of development, and any persons who are opposed to such plan may be heard and may state their reasons therefor. Such hearing shall be held not earlier than thirty days after such plan has been filed in the office of the town clerk of the municipality. Notice of the time and place of such

of the municipality in which such interests are located and, in contrast to § 15-73, it does not explicitly require the publication in detailed form of the standards by which the commissioner will make determinations. Because repeals by implication are disfavored we have managed with difficulty to answer the question raised by this appeal without reading § 15-74 out of the aeronautics law.

The predecessor to § 15-74 was enacted into law by Public Acts 1929, c. 236, § 5. The predecessor to § 15-73 was enacted into law by Public Acts, Spec. Sess., May, 1946, No. 10, § 36. Sections 13b-43 and 13b-44 were enacted into law by Public Acts 1969, No. 768, §§ 38 and 39. Sections 15-73, 13b-43 and 13b-44, therefore, were passed after § 15-74. To the extent that § 15-74 and § 15-73 may conflict, § 15-73 would control because it is both more recent and

---

hearing shall be published in a newspaper having a substantial circulation in such municipality at least twice, at intervals of not less than two days, the first not more than fifteen days nor less than ten days and the second not less than two days before such hearing.

"(c) Upon the completion of such hearing, the commissioner shall consider all the evidence relevant to the proposed plan of development, and if he determines that the airport establishment or expansion provided in the plan is necessary, shall make such changes or modifications in the plan as are in the public interest. The commissioner shall file a copy of the revised plan, showing the changes or modifications made, in the office of the town clerk of the municipality and shall notify and send a copy of such revised plan to the chief executive officer or first selectman of such municipality. Such notice shall contain the request that the municipality approve the proposed establishment or expansion, which approval shall be by vote of a town or borough, and by vote of the city council of a city.

"(d) If the municipality fails or neglects to act upon a request for approval within sixty days after the receipt thereof by its chief executive officer or first selectman, the municipality shall be deemed to have approved of such establishment or expansion. If the municipality by vote disapproves of the establishment or expansion, the commissioner may, within thirty days following such vote, appeal to the superior court for the judicial district in which the municipality is located and the appeal shall be accorded a privileged status on the

more specific.[6] *East Haven* v. *New Haven*, 159 Conn. 453, 467, 271 A.2d 110 (1970); *Connelly* v. *Bridgeport*, 104 Conn. 238, 253, 132 A. 690 (1926); *Fair Haven & Westville R. Co.* v. *New Haven*, 75 Conn. 442, 446, 53 A. 960 (1903), aff'd, 203 U.S. 379, 27 S. Ct. 74, 51 L. Ed. 237 (1906); Sutherland, Statutory Construction (4th Ed.) § 23.09.

Section 15-74 applies to all airports, while § 15-73 applies only to state acquired or operated and municipal airports. Section 15-74 is not inconsistent with §§ 15-73, 13b-43 and 13b-44 to the extent it applies to nonstate, nonmunicipal airports. It is also not inconsistent with §§ 15-73, 13b-43 and 13b-44, in requiring just compensation to be paid to

docket and trial list. The court shall, after hearing, determine whether the commissioner has proven the necessity for the establishment or expansion of an airport within the municipality and the burden of proving such necessity shall be upon the commissioner. If the court, after hearing, determines that the commissioner has not sustained such burden of proof, the court shall enter judgment for, and may award reasonable costs to, the municipality. If the court, after hearing, determines that the commissioner has sustained such burden of proof, the court may set aside the action of the municipality disapproving the establishment or expansion and may enter such order upon such terms and conditions as it deems appropriate to safeguard the rights of the parties and the public.

"(e) After a plan has been legally approved, or its disapproval has been set aside by the superior court, the state may take any lands or interests therein contained in the plan upon paying just compensation to the owner. In case the state cannot agree with such owner upon the amount of such compensation, the amount shall be determined in the manner prescribed in section 48-12. An appeal from the amount so determined shall not act as a stay of the taking of such land, provided no facility or land or interest therein held by a public service company for service to the public shall be so taken or removed unless, at the expense of the state, an adequate and equal substitute approved by the department of public utility control shall first be provided."

[6] General Statutes § 15-74 was amended, in minor aspects, both simultaneously with and subsequent to the passage of §§ 15-73, 13b-43 and 13b-44. None of the amendments negates the restrictive effect of §§ 15-73, 13b-43 and 13b-44.

the owner of the hazard. Furthermore, § 15-74 avoids another potential conflict with § 15-73, unless we read into §15-73 a prohibition on the commissioner's removal of hazards at municipal airports. We cannot manufacture such a conflict and therefore we conclude that §§ 15-73, 13b-43 and 13b-44 do not cover the whole field of removing municipal airport hazards.

The circumstances of this appeal do not require us to decide whether § 15-74 allows the commissioner to remove municipal airport hazards by means which amount to the acquisition of an interest in the hazard. Even if § 15-74 allows removal by such means, it would not authorize a permanent injunction under the circumstances of this case. The legislature could not reasonably have intended to require more restrictive procedures when the commissioner acquires an interest in hazards at state acquired or operated airports and when a municipality acquires an interest in hazards at a municipal airport than when the commissioner acquires an interest in hazards at a municipal or other nonstate airport. Therefore if we were to construe § 15-74 to permit the commissioner to acquire an interest in a municipal airport hazard, we would also construe it to require the same procedural restrictions as § 15-73 before the commissioner could do so.[7] Because obtaining a permanent injunction with respect to an airport hazard is the functional equivalent of acquiring an interest in the hazard, the trial court

---

[7] At this stage we need not decide whether General Statutes § 13b-43 or § 13b-44 would be the controlling provision if the commissioner may acquire an interest in a municipal airport hazard. Legislative clarification would be helpful.

erred in granting the plaintiffs such relief before they complied with the necessary preliminary procedure.[8]

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the defendant.

In this opinion the other judges concurred.

---

[8] Because obtaining a temporary injunction with respect to an airport hazard is not the functional equivalent of acquiring an interest in the hazard, the commissioner, in an appropriate case, may obtain temporary relief under § 15-74 while the procedures required by § 15-73 are in progress.