## STATE EX REL. COUNTY OF RAMSEY v. C. M. BABCOCK AND OTHERS.[1]

May 6, 1932.

No. 28,892.

[1]Reported in 242 N. W. 474.

·*M. F. Kinkead* and *John W. McConneloug*, for appellant.

*Henry N. Benson*, Attorney General, and *Charles E. Phillips*, Deputy Attorney General, for respondents.

OLSEN, J.

Ramsey county, the relator herein, appeals from an order overruling a demurrer to respondents' answer, the court having certified that the question involved is important and doubtful.

The action is by mandamus to compel the commissioner of highways to certify the amount which Ramsey county is entitled to be reimbursed for the construction of what has since been designated as trunk highways 62 and 63, including the cost of right of way therefor, and to have the commissioner, state auditor, state treasurer, and secretary of state issue and sell bonds sufficient to pay the amount so certified. The respondents concede that Ramsey county is entitled to be reimbursed for the cost of construction of these highways, but deny that the county is entitled to be reimbursed for the cost of acquiring the right of way for the roads. Highway No. 62 for a part of the way is a new road and does not follow the route of any then existing highway; and in acquiring right of way for this new road Ramsey county expended some $43,757.39, which is the item here in dispute.

Highway No. 62 was established and constructed by Ramsey county in 1926 and 1927. It is a paved road. Before locating and constructing the road the county officials consulted with the state highway commissioner, and the route for the road was agreed upon. The work was done according to the plans and specifications of ·the state highway department, and the commissioner agreed that when

the road so constructed should be completed he would designate same as trunk highway No. 62. After its completion he did so designate it.

Art. 16 of the state constitution, establishing the trunk highway system, was adopted November 2, 1920. Section 1 provides for the establishment of some 70 trunk highways, designated by number, and fixes the points of commencement and termination of each and the general route or direction. It leaves the definite route of the highways to be later fixed by such board or officer as may be appointed by law. It provides that these highways shall be "located, constructed, reconstructed, improved and forever maintained * * * by the state of Minnesota."

Section 2 of art. 16 provides for reimbursements as follows:

"The trunk highway fund shall be used solely for the purposes specified in section 1 of this article, and when duly authorized by legislative enactment to reimburse any county for the money expended by it subsequent to February 1st, 1919, in permanently improving any road hereinbefore specifically described, in accordance with plans and specifications therefor approved by the commissioner of highways."

It is of some importance to compare the language used in § 1, as to the purposes for which the trunk highway funds may be used, and the purpose for which reimbursements may be made under § 2. Under § 1 there are five specified purposes for which trunk highway funds may be used, namely, for locating, constructing, reconstructing, improving, and maintaining trunk highways. The word "improved" in the connection in which it is used in § 1, coming after the words "located, constructed, reconstructed," quite clearly has reference to a betterment of an established highway. It would be a violent construction to hold that the word "improved" there used meant to acquire the right of way for the highway. Coming then to § 2, it is significant that reimbursement to counties can be made only for money expended in permanently improving any road. The word "permanently" was evidently used to prevent reimbursement for ordinary repairs, which are not permanent im-

provements. The provisions of § 2 are clearly intended as a limitation upon the right of counties to receive reimbursement. The right is limited strictly to reimbursements for permanently improving roads. We construe the words "improving any road" to mean the same as the word "improved" in the first section, that is, a betterment of an existing highway, and not to include expenditures·made for the purpose of acquiring right of way for the road.

The words "improve" and "improvement" are frequently used in connection with land. They are used as denoting some betterment, such as by cultivation, clearing, drainage, irrigation, erecting buildings, or otherwise enhancing the value or usefulness of the land. As far as we know, it has never been claimed that the purchasing of the title to the land or the acquiring of an easement or other right therein is an improvement of the land. The word "improve" has several meanings: To make better; to increase the value or good qualities of; to ameliorate by care or cultivation are some of the common definitions. But in every instance, before you can improve a thing or subject, there must be in existence a thing or subject to improve. There was no road in existence before the right of way was acquired, and the purchase of the right of way was the purchase of the title to or easement in the land to be thereafter improved by the construction of the road.

The word "improve" is a common word in everyday use. Its meaning is well understood. As commonly used, the word means to make better or to enhance the quality or value of some existing thing or subject. In speaking of improving a highway, we have reference to bettering a highway already in existence. The acquiring of the right of way for a road is obtaining title to or an easement in the land on which the highway is to be built, and is not an improvement of the road.

We have also the construction placed upon the reimbursement provisions of the constitution and the statutes by the attorney general in 1921, less than a year after the constitutional amendment was adopted, and followed by the highway department in making reimbursements ever since, to the effect that reimbursements to

counties for permanently improving roads do not include reimbursement for money expended in acquiring right of way for new roads.

There is force in the argument that, as the commissioner of highways was consulted and the road was constructed in accordance with plans approved by the highway department and on a route which the commissioner approved and which he agreed thereafter to designate and take over as a trunk highway, the state in equity should reimburse the county for all its expenditures. But the constitutional provision for reimbursement is so limited that reimbursement for cost of right of way cannot be made out of the trunk highway fund. Whether the state could reimburse the county for cost of right of way out of other road funds is not before us.

It is suggested that the record does not show at what time the road was designated and taken over by the commissioner of highways as a trunk highway. The record does not expressly show, but the fact that Ramsey county acquired the right of way and built the road we think sufficiently shows that it was built as a county road and not designated and taken over by the state as a trunk highway until after it was completed. Ramsey county would have had no occasion or right to construct a highway already taken over by the state.

We do not find it necessary to consider the several reimbursement acts passed by the legislature. Such acts were passed in 1923, 1925, 1927, 1929, and 1931. These acts are no broader on this point than the constitutional provision, and of course could not provide for reimbursement of the counties out of the trunk highway fund to any greater extent than that provided in the constitution.

Order affirmed.

HILTON, J. took no part.

STONE, J. (dissenting).

I cannot find in constitution or statute any ambiguity to be settled by the practical construction referred to in this case.

By art. 16 of the state constitution there was "created and established" our trunk highway system, consisting of the enumerated 70 trunk highways. None of them was specifically laid out upon or over an existing route, but nevertheless each was "created and established" as a road. By § 2 "the trunk highway sinking fund" was likewise established, and the use of it authorized for the purpose, among others, of reimbursing "any county for the money expended by it subsequent to February 1st, 1919, in permanently improving" any trunk highway.

It is a matter of common knowledge, of which we cannot escape judicial notice, that in the final location of the trunk highways existing roads were utilized to a large extent. Many were straightened by the elimination of angles and curvatures. Some were relocated, although in many cases the new location closely paralleled the old. We are now dealing with a relocation of such magnitude that it is denied to be a permanent improvement of a trunk highway. In that denial I cannot agree.

Section 1 proclaims that the state highways "shall be located, constructed, reconstructed, improved and forever maintained * * * by the state." Those are the "purposes" to which, "solely," § 2 dedicates the highway funds. *Location* of a trunk highway is as much one of them, to be paid for by the state, as construction and maintenance. The subject of § 1 is the highways themselves rather than the funds or the use of the funds to be spent on them. The latter subject is dealt with exclusively by § 2, which directs how the trunk highway funds shall be used—among other things to reimburse counties for money spent by them in permanently improving any trunk highway. As in Commrs. of Putnam County v. Young, 36 Ohio St. 288, 292, it seems manifest from the language of the whole Babcock amendment, particularly as many of the trunk highways were then mere "paper roads" or routes, that the word "improvement" related not only to the betterment of an existing road but included also "the establishment and construction of a new road."

That construction was adopted by the legislature, for by L. 1921, p. 406, c. 323, § 1, subd. (1), "the words 'Trunk Highways' shall be

construed to include all roads established, or to be established under the provisions of Article 16." (G. S. 1923 [1 Mason, 1927] § 2542.) The same idea is expressed in L. 1931, p. 190, c. 168, Mason, 1931 Supp. Const. art. 16, § 1, the permanent improvement, which is the subject of that act, including plainly every step in the conversion of the mere routes designated by § 1 of art. 16 into completed highways. By § 2 "engineering expense" is included specifically as an item for which counties are entitled to reimbursement. "Engineering expense" must include the cost of the survey of the route of a new highway or that for the relocation of an old one. We come then to the conclusion that a county may have reimbursement for expense of surveying the route of a trunk highway but not for the cost of the right of way surveyed. Certainly no such anomalous result was intended.

My own opinion is that an old road, answering the calls for a trunk highway, is *improved* by relocation, the survey and acquisition of necessary right of way being but the initial step therein. I think also that where art. 16 established, to start with, merely a route or paper road, it is an improvement of that route or road to acquire the necessary right of way; that the acquisition of the latter is just as much improvement as grading or surfacing, for the cost of which it is conceded the counties get reimbursement.

The purpose is declared by art. 16 at the outset, and should control, that the state, and not the counties, is ultimately to bear the cost of location as well as construction and maintenance of the whole system. We defeat that purpose in proportion as we deny counties reimbursement for the cost of location, i. e. right of way.

The obvious aim of the reimbursement provisions, both in art. 16 and the legislation for its execution, was to enable and encourage counties to expedite the completion of the state highway system by undertaking and financing some of the work. If we deny them reimbursement for cost of right of way, I submit that we impose an unintended, illogical, and grossly unjust penalty for their performance of a state function which they were invited to perform under a promise of complete compensation.

The constitutional mandate that the state highway funds shall stand *all* the cost of constructing the new system, including the cost of location, is plain. It prevents my joining in the hypertechnical construction necessary to saddle a part of that cost on the taxpayers of those counties which have taken the state at its word and have done much to expedite state road construction. I cannot concur in a decision which gives such counties partial reimbursement in place of the full compensation which they were promised by both constitution and statute.

LORING, J. (dissenting).

I concur in the opinion of Mr. Justice Stone.

