Lentz and another, Appellants, vs. Dostal, Respondent.

*May 10—June 6, 1933.*

82

For the appellants there was a brief by *Kopp & Brunckhorst* of Platteville, and oral argument by *Arthur W. Kopp*. *Harry E. Carthew* of Lancaster, for the respondent.

FOWLER, J. Respondent's counsel does not dispute that the defendant is bound by the original judgment of the circuit court for Grant county imposing upon him the obligation to invest the trust funds in such securities as sec. 231.32, Stats., requires of executors, guardians, and trustees, and we therefore assume that the judgment was correct or at least *res judicata* because not appealed from. Paragraph (g) of said section governing investment in real-estate mortgages requires that such mortgages be "first real-estate mortgages . . . on improved farm property or improved urban property . . . the amount of which mortgages . . . does not exceed one-half of the actual value of the property covered thereby." The appellants claim (1) that the $2,000 mortgage was not such a mortgage as the statute requires because the eighty acres of land covered by it was not "improved farm property," and (2) because the mortgaged land was not actually worth twice the amount of the mortgage when the mortgage was taken by the defendant.

(1) Whether the land covered by the mortgage was improved farm property is under the evidence, which is without dispute, a question of law rather than fact, and the

conclusion of the trial court does not foreclose this court from deciding the point according to its own opinion. At the time the defendant purchased the mortgage thirty to forty acres of the land·was and long had been under plow. The remainder was woodland, cleared of brush, and under pasture. The land was fenced. There had formerly been upon it a log cabin and log stable, but these had been removed many years before the mortgage was purchased. The land was fifty rods from a public road and was used in connection with an adjoining farm.

No decisions are cited construing the phrase "improved farm property." There are definitions enough of the terms "improve" and "improvements" as they are used in different statutes. Under them, and without them for that matter, there would seem to be no doubt that the land covered by the mortgage is improved land. But the land did not constitute a farm, and can property not constituting a farm be considered as "improved farm property?" Perhaps this point could be determined either way, but we are of the opinion that we should hold the land involved to be "improved farm property" within the meaning of the statute. We can perceive no sound reason for not so considering it.

The appellants contend that we should hold otherwise because a trustee was formerly held by this court in *Simmons v. Oliver,* 74 Wis. 633, 43 N. W. 561, obligated to invest trust funds in loans on real estate or some other security approved by the court, and the history of the statute shows a legislative intent that loans secured on land other than urban land should be upon improved farms. The first statute on the subject, ch. 317, Laws of 1903, merely provided for investment of trust funds in governmental and real-estate securities or other specified securities. Next came ch. 536, Laws of 1915, which provided that mortgage investments should be "first real-estate mortgages . . . on improved urban or farm property." By ch. 158, Laws of

1917, this was changed to read "on improved farm property or improved urban property," which is the language of the present statute so far as here material. No doubt the changes in the statute were intended to strengthen the security of trust funds, and "improved farm property" was considered by the legislature to mean something more than "farm property." But we do not see that these statutory changes require or afford any particular reason for us to hold that mortgage investments, if on improved farm lands, must be on land constituting an improved farm, under operation or fitted for occupation and use as an independent farm.

(2) As to the value of the land two farmers testified for the petitioners, one that at the time the mortgage was taken the land was worth $2,500 and the other that it was worth $1,600 to $2,000. Seven witnesses testified for the defendant on this subject and placed the value from $4,000 or more to $6,400. While three of these witnesses were the defendant and his bondsmen, the others were apparently disinterested. In this situation it cannot be said that the finding of the trial court is contrary to the preponderance of the evidence and must be affirmed.

(3) Appellants also contend that the trustee was at fault for not pursuing the assignor of the mortgage as personally liable on the mortgage debt assigned. The debt assigned to defendant was a promissory note negotiable under the negotiable instrument law, indorsed "pay to the order of" the defendant and signed by the Farmers & Merchants Bank of Muscoda. It is contended that this made the indorser personally liable on the note. This would be true but for the language incorporated in the formal assignment of the mortgage, which concluded with the words "not however hereby guaranteeing anything and without recourse to it (the assigning bank) in any event." If the transaction be considered as a whole, this language negatives the idea of assumption of liability as an indorser. But the appellants

contend that where the terms of a negotiable note and the terms of the assignment of a mortgage securing it conflict, the note must control. From this the appellants argue that the terms of the indorsement in the instant case made the bank personally liable as an indorser, and that due diligence on the part of the defendant required that he take the steps necessary to charge the bank as an indorser and enforce that liability against it.

There can be no doubt from the language of the assignment that the bank intended to relieve itself from personal liability, and that it supposed the legal effect of the terms of the assignment was to secure that exemption. The defendant testifies that there was no agreement that the bank should "stand back" of the loan and that he did not ask the bank to do so. In this situation it seems quite obvious that the bank could defeat a suit on the note, had proper steps been taken to charge it as indorser, by claiming reformation of the indorsement on the ground of mistake. A mutual mistake of parties to a transaction, whether of fact or law, may be corrected in equity to effectuate their intention. The bank in a suit against it could by counterclaim have had reformation of the indorsement. *Shearer v. Pringle,* 203 Wis. 164, 233 N. W. 623; *Johnson v. Williard,* 83 Wis. 420, 53 N. W. 776. It thus appears that any attempt to charge the bank as indorser and enforce liability against it would have been futile. Whether it would have been otherwise had the defendant relied on the indorsement as charging the bank with liability as indorser on the note we need not consider. The trial court's finding of good faith and due care and diligence on the part of the defendant in making the investment and in his foreclosure of the mortgage is supported by the evidence and the judgment of the circuit court must be affirmed.

*By the Court.*—The judgment of the circuit court is affirmed.