THE METROPOLITAN DISTRICT *v.*
TOWN OF BARKHAMSTED
(12670)

PETERS, C. J., HEALEY, SHEA, SANTANIELLO, and CALLAHAN, Js.

Argued January 9—decision released April 1, 1986

*Wesley W. Horton,* with whom were *David L. Fineberg* and *David B. Losee,* for the appellant (defendant).

*Bourke G. Spellacy,* with whom were *Karen P. Blado, Michael J. Whelton* and, on the brief, *Katherine C. Callahan,* for the appellee (plaintiff).

*Charles Bauer* and *Ernest A. Inglis, Jr.,* filed a brief as amici curiae.

SHEA, J. The principal issue on this appeal after certification from a decision of the Appellate Court is the determination of the proper basis for the valuation of water supply land owned by the plaintiff, the Metropolitan District (hereinafter the district), and located in the town of Barkhamsted (hereinafter the town), for the purpose of the tax assessment lists of 1979, 1980 and 1981. We granted certification to review the judgment of the Appellate Court setting aside the judgment of the Superior Court, which had reduced the town's assessment of the district's property situated within the town from $8,922,660 to $8,351,280 for each list. We affirm the judgment of the Appellate Court.

The decision of the Appellate Court fully describes the underlying facts, which are not in dispute. *Metropolitan District* v. *Barkhamsted,* 3 Conn. App. 53, 485 A.2d 1311 (1984). In 1979, the town assessed 6628 acres of water supply land owned by the district, a specially chartered municipal corporation, at $1900 per acre. The district appealed to the town's board of tax review. The board refused to modify the assessment and the plaintiff appealed to the Superior Court. See General Statutes § 12-119. The appeal was heard by a state trial referee, exercising the powers of the Superior Court, who concluded that the value of the property was $1800 per acre. The town consented to the reduction of its $1900 per acre figure to the court's valuation. The district appealed to the Appellate Court, claiming error in the referee's application of the property tax assessment provision contained in its charter.

The district was created in 1929 by a special act of the General Assembly. 20 Spec. Acts 1204, No. 511. The act, as amended, is commonly referred to as the Charter of the Metropolitan District (hereinafter the charter). The charter provides that water supply land situated in nonuser towns be "assessed for taxation at

the average assessed valuation per acre of the improved farming land in such town." See part I of this opinion, infra.

The Appellate Court enunciated a definition of "improved farmland"[1] under the charter and concluded that the Superior Court's failure to define that term invalidated its valuation because it had no proper standard by which to weigh the evidence of value presented at trial. The Appellate Court defined "improved farmland" as land that "has been altered, changed or developed from its natural state, in a not inconsequential manner, in order to enhance or promote its use as farmland." *Metropolitan District* v. *Barkhamsted,* supra, 73. The court set aside the judgment of the Superior Court and ordered a new trial to determine the value of "improved farmland" in the town in accordance with this definition.

We granted certification to review the judgment of the Appellate Court in respect to two issues: "(1) the definition of 'improved farmland' under [General Statutes] § 12-76 and [the] related charter provision of the Metropolitan District, and (2) the claimed implied repeal of the charter provision by [General Statutes] § 12-76."[2] In our review of these certified issues we focus on the

---

[1] While the charter used the term "farming land," General Statutes § 12-76 uses the term "farm land." We agree with the Appellate Court that these two terms are synonymous. *Metropolitan District* v. *Barkhamsted,* 3 Conn. App. 53, 56 n.6, 485 A.2d 1311 (1984). In this opinion we adopt the use of "farmland," in order to comport with the opinion of the Appellate Court.

[2] The Appellate Court found in favor of the town that the provisions of General Statutes §§ 12-107a through 12-107c are inapplicable to the assessment of the district's land. *Metropolitan District* v. *Barkhamsted,* 3 Conn. App. 53, 65–68, 485 A.2d 1311 (1984). Essentially, these statutes enable owners of "farm land" to be free from the pressure to sell their property caused by high tax rates based on increasing market value created by the advent of residential and commercial development. Id. Under this scheme, qualifying "farm land" is valued based on its current use, without regard to any potential use of the property. *Meriden* v. *Board of Tax Review,* 161

judgment of the Appellate Court, not of the Superior Court. The only questions we need consider are those raised by the petition for certification, and we will ordinarily consider these issues in the manner in which they have been framed in the Appellate Court. See Practice Book § 3154; *Petrowski* v. *Norwich Free Academy,* 199 Conn. 231, 234, 506 A.2d 139 (1986); *State* v. *Torrence,* 196 Conn. 430, 433, 493 A.2d 865 (1985).

I

A brief statutory history of General Statutes § 12-76 and the district's charter is essential to our review of the Appellate Court's decision. In *West Hartford* v. *Board of Water Commissioners,* 44 Conn. 360 (1877), we held that a reservoir owned by a municipal corporation in another town was *not* subject to taxation in the town where the reservoir is situated. The General Assembly's dissatisfaction with the result of this case prompted adoption of the original version of General Statutes § 12-76, which provided: "Land owned or taken by any municipal corporation, for the purpose of creating or furnishing a supply of water for its use or benefit, shall be liable to taxation, and shall be set in the list in the town where such land is situated, to the corporation owning or controlling such water supply, *at a valuation which would be fair for said land if used for agricultural purposes:* provided, however, that no such land shall be liable to taxation, or set in any list as aforesaid, wherever the inhabitants of the town in which the said land is situated have the right to the use of such water supply upon the same terms and conditions as the inhabitants of such municipal corporation, and when such town actually uses the same."

Conn. 396, 403, 288 A.2d 435 (1971). This issue is not before us because the district did not file with this court a cross petition for certification under Practice Book § 3141. *State* v. *Torrence,* 196 Conn. 430, 434 n.6, 493 A.2d 865 (1985).

(Emphasis added.) Public Acts 1879, c. 79. Subsequently, in 1913, the legislature deleted the language "at a valuation which would be fair for said land if used for agricultural purposes" and substituted *"at the average assessed valuation per acre of the improved farming land in said town."* (Emphasis added.) Public Acts 1913, c. 156.

In 1929, the Metropolitan District was created by a special act of the General Assembly. 20 Spec. Acts 1204, No. 511. Initially, the act contained no provision establishing a tax valuation standard for its water supply property. The act was, however, subsequently amended by borrowing language virtually identical to the 1913 amendment to § 12-76, that "all land taken for any of said purposes shall be set in the list for taxation in the town in which said land is situated, to The Metropolitan District, and assessed for taxation *at the average assessed valuation per acre of the improved farming land in such town."* (Emphasis added.) 21 Spec. Acts 655, No. 505, § 14; 25 Spec. Acts 1162, No. 444, § 10.

In 1963, the pertinent portion of the present General Statutes § 12-76 was amended to provide: "[S]uch land shall be liable to taxation and shall be assessed in the town in which such land is situated to the corporation owning or controlling such water supply *at what would be its fair market value were it improved farm land."* (Emphasis added.) Public Acts 1963, No. 490, § 10.[3]

---

[3] In 1982, the General Assembly extended the language of General Statutes § 12-76 to include land owned by municipal water districts created by special act. Public Acts 1982, No. 82-452, § 1. General Statutes § 12-76 now provides in relevant part: "Land owned or taken by any municipal corporation, including any metropolitan district established under provisions of the general statutes or any special act . . . shall be assessed . . . at what would be its fair market value were it improved farm land, notwithstanding the provisions of . . . any special act."

## II

We agree with the Appellate Court that the trial court did not define the phrase "improved farmland." This omission, as the Appellate Court concluded, rendered its determination of the value of the district's property invalid because the court did not utilize a proper standard in evaluating the evidence of value presented at trial. "[T]he fundamental issue in the case was never considered." *Metropolitan District* v. *Barkhamsted,* supra, 68.

Each witness at trial employed a different definition of "improved farmland." The town assessor, Mary Ringuette, defined it as land "able to have a tractor go through and plant crops." The town's expert appraiser, James C. Oles, defined "improved farmland" as "prime crop land cleared, the absolute best farmland there is." The district's project manager, Leon C. Kirk, did not explicitly define the term but did opine that any available *farmland* in the town would fall within the purview of "improved farmland." It is apparent that the trial court simply adopted the testimony of Oles, which was based upon sales of improved farmland, "the absolute best farmland there is" under his definition, in other towns in Litchfield county.

In order to fulfill the statutory mandate of assessing the district's property at the average assessed valuation of the improved farmland in the town, it is essential, as the Appellate Court concluded, to define the term "improved farmland" so that whatever land in the town satisfies that definition can be identified and its "average assessed valuation" ascertained. The Appellate Court found that none of the valuation standards used at the trial complied with the charter criterion for assessing the district's land. The pertinent provision of the charter provides that the district's

property shall be assessed "at the average assessed valuation . . . of the improved farming land in such town." " ' [T]he word "shall" must be assumed to have been used with full awareness of its ordinary meaning.' *Graham* v. *Zimmerman,* 181 Conn. 367, 371, 435 A.2d 996 (1980). 'Shall' is a word ordinarily creating a mandatory duty. *Shulman* v. *Zoning Board of Appeals,* 154 Conn. 426, 428–29, 226 A.2d 380 (1967)." *Metropolitan District* v. *Barkhamsted,* supra, 69–70. The Appellate Court noted that the charter is devoid of any specific definition of "improved farmland," "improved" or "farmland." Id., 71. " 'Where a statute or regulation does not define a term, it is appropriate to focus upon its common understanding as expressed in the law and upon its dictionary meaning. *The Hearst Corporation* v. *State Department of Assessments & Taxation,* 269 Md. 625, 308 A.2d 679 (1973).' *Ziperstein* v. *Tax Commissioner,* 178 Conn. 493, 500, 423 A.2d 129 (1979)." *Metropolitan District* v. *Barkhamsted,* supra, 72; see *Doe* v. *Manson,* 183 Conn. 183, 186–87, 438 A.2d 859 (1981).

The Appellate Court looked to General Statutes § 1-1 (q) for the definition of the term "farming." Activities included within this statutory definition of farming are cultivation of the soil, dairying, forestry and raising any agricultural or horticultural commodity. Evidently, " 'farmland' includes land used for a broad range of purposes . . . ." *Metropolitan District* v. *Barkhamsted,* supra, 71 n.10. The Appellate Court aptly reasoned that land used to conduct any of these "farming" activities delineated in § 1-1 (q) is "farmland." See *Johnson* v. *Board of Tax Review,* 160 Conn. 71, 273 A.2d 706 (1970).

The Appellate Court then considered dictionary definitions and common usage in order to define the word "improve": " '[T]o increase the value of (land or property) by bringing under cultivation, reclaiming for

agriculture or stock raising, erecting buildings or other structures, laying out streets, or installing utilities as sewers (*improved* farmland).' (Emphasis in original.) The same dictionary defines 'reclaim' in part as follows: '[T]o rescue from a wild or uncultivated state: make fit for cultivation or use.' " *Metropolitan District* v. *Barkhamsted,* supra, 72, quoting Webster, Third New International Dictionary; see *Builders Land Co.* v. *Martens,* 255 Iowa 231, 233–34, 122 N.W.2d 189 (1963); *State* v. *Babcock,* 186 Minn. 132, 135, 242 N.W. 474 (1932).

Because the charter uses a technical term, "improved farmland," clearly associated with the farm industry, that term "should be accorded the meaning which [it] would convey to an informed person in the . . . trade or business." *Hardware Mutual Casualty Co.* v. *Premo,* 153 Conn. 465, 475, 217 A.2d 698 (1966); *Manchester* v. *Manchester Police Union,* 3 Conn App. 1, 9, 484 A.2d 455 (1984). Therefore, in an effort to define the word "improved" the Appellate Court also relied on an assessor's reference manual definition of "improvement": " '[a]nything done to raw land with the intention of increasing its value. Thus, a structure erected on the property constitutes one very common type of improvement, although other actions, such as those taken to improve drainage, are also improvements. . . .' International Association of Assessing Officers, Improving Real Property Assessment, A Reference Manual, p. 425." *Metropolitan District* v. *Barkhamsted,* supra, 72–73.

Applying the dictionary definitions and common parlance of "improve" to the definition of "farming" as contained in General Statutes § 1-1 (q), we agree with the Appellate Court that the term "improved farmland" in the district's charter refers to land that has been altered or developed from its natural state in order to enhance or promote its use for farming. See *Lentz*

v. *Dostal,* 212 Wis. 81, 85, 249 N.W. 174 (1933) (parcel of land was "improved farm property" within statute where pasture was under plow, and remaining woodland cleared of brush). While this definition is clearly a matter of law, the application of this standard to a particular parcel of land is a question of fact for the trial court. The trial court must consider, by reference to the definition enunciated by the Appellate Court, whether sufficient improvements have been made to particular land to justify its classification as "improved farmland."

The town argues that its appraiser's standard of "prime crop land cleared" is the most appropriate definition because that will result in tax revenue at a rate commensurate with the highest quality farmland.[4] We recognize that the purpose of the taxing provisions of the charter is to ensure that towns not sharing in the use of water supply property do not lose the tax revenue from the land taken for the reservoirs. See *Meriden* v. *Board of Tax Review,* 161 Conn. 396, 403, 288 A.2d 435 (1971); *Norwalk* v. *New Canaan,* 85 Conn. 119, 81 A. 1027 (1911). We point out that the Appellate Court's definition would encompass "prime crop land *cleared,*" as such land is certainly improved by virtue of being cleared, but is not restricted to such land. In view of the broader definition of "farming" in § 1-1 (q), we do not believe that the legislature intended to limit the definition of "improved farmland" solely to land specially suited to cultivation. The objective of preserv-

---

[4] The town also claims that the Appellate Court's definition of "improved farmland" is contrary to our decision in *Norwalk* v. *New Canaan,* 85 Conn. 119, 125–27, 81 A. 1027 (1911). In *Norwalk,* this court concluded that certain items comprising components of a municipal water supply corporation (i.e., dam, underground pipes, etc.) were not taxable under General Statutes § 12-76 because they did not constitute "[l]and owned or taken . . . for the purpose of creating or furnishing a supply of water." *Norwalk,* however, is inapplicable to the present case because it involves the definition of "water supply land" under § 12-76 and not that of "improved farmland" under the district's charter.

ing the tax base of a town when its land is taken for the purpose of supplying water to other municipalities does not require that the town be compensated far in excess of the lost revenue by valuing each acre of the water supply property, regardless of its potential as quality farmland, at a figure applicable only to the most desirable parcels of farmland in the town. The charter provision refers to the "average assessed valuation . . . of the improved farming land," indicating a realization on the part of the legislature that "improved farming land" in the town would not be of uniform value for farming. The implicit assumption in this formula was that each acre of water supply land had a potential for improvement as farmland that would never be achieved because the land had been taken for the purpose of a water supply, thus depriving the town of tax revenue it would ordinarily have realized. This assumption would have been wholly unrealistic if it were based on the notion that each acre of water supply land had a potential for improvement as "prime crop land cleared, the best farmland there is." A tax formula so wholly divorced from reality would have imposed an unfair tax burden on the customer towns served by the district, going far beyond the legitimate purpose of compensating the town for revenue it would normally have received. The Appellate Court's definition of "improved farmland" is consistent with the legislative policy of fair compensation to nonuser municipalities and effectively balances the competing interests of the taxing town and the district's customers.

### III

The town also claims that the provisions of General Statutes § 12-76, rather than those of the charter, apply to the district's water supply property. The essential difference in the two provisions is that the charter specifically requires that water supply land be valued in comparison to that of other improved farmland located

in the same town, while the valuation procedure under the terms of § 12-76 is not so limited. The relevant charter provision provides that water supply land shall be assessed "at the average assessed valuation . . . of the improved farming land *in such town.*" (Emphasis added.) In 1963, the relevant portion of § 12-76 was changed to provide that water supply property of a municipal corporation located in another municipality whose inhabitants do not have the right to use the water, is "assessed . . . at what would be its fair market value were it improved farm land." Public Acts 1963, No. 490, § 10. The town claims that this amendment repealed the tax assessment provision of the district's charter by implication. As did the Appellate Court, we disagree.

We have consistently expressed our disfavor of repeals by implication. *Southern Connecticut Gas Co.* v. *Housing Authority,* 191 Conn. 514, 521, 468 A.2d 574 (1983); *Powers* v. *Ulichny,* 185 Conn. 145, 153, 440 A.2d 885 (1981); *Hirschfeld* v. *Commission on Claims,* 172 Conn 603, 606, 376 A.2d 71 (1977); *Knights of Columbus Council* v. *Mulcahy,* 154 Conn. 583, 591, 227 A.2d 413 (1967). Nevertheless, it is a well established principle of statutory construction that subsequent enactments of the legislature are presumed to repeal earlier inconsistent ones to the extent that they are in conflict. *Southern Connecticut Gas Co.* v. *Housing Authority,* supra; *Beccia* v. *Waterbury,* 185 Conn. 445, 458, 441 A.2d 131 (1981); *C. White & Son, Inc.* v. *Rocky Hill,* 181 Conn. 114, 123, 434 A.2d 949 (1980). "A special and local statute, providing for a particular case or class of cases, is not affected by a statute general in its terms, broad enough to include cases embraced in the special law, unless the intent to repeal or alter is manifest." *State ex rel. Wallen* v. *Hatch,* 82 Conn. 122, 124, 72 A. 575 (1909); *Miller* v. *Eighth Utilities District,* 179 Conn. 589, 593, 427 A.2d 425 (1980);

*Rocky Hill Convalescent Hospital, Inc.* v. *Metropolitan District,* 160 Conn. 446, 454–55, 280 A.2d 344 (1971). " 'There is no rule which prohibits the repeal by implication of a special or specific act by a general or broad one. The question is always one of legislative intention, and the special or specific act must yield to the later general or broad act, where there is a manifest legislative intent that the general act shall be of universal application notwithstanding the prior special or specific act.' 50 Am. Jur. 565, Statutes, § 544." *East Haven* v. *New Haven,* 159 Conn. 453, 468, 271 A.2d 110 (1970).

The town argues that unless the charter is construed to permit the assessor to consider the value of property in other towns, the charter and § 12-76 are incompatible because the charter does not provide for the case in which there is no "improved farmland" in a town in which property of the district is situated. Therefore, the gravamen of the town's claim of repeal by implication is the assertion that § 12-76 provides for a situation not contemplated by the charter. We refuse to equate this potential, unprovided-for situation with a "manifest intent to repeal or alter" the charter on the part of the legislature in enacting the 1963 amendment to § 12-76. In all instances except where no qualifying farmland exists within a town, the charter can operate in an arena independent from § 12-76.

" 'If courts can by any fair interpretation find a reasonable field of operation for both statutes without destroying or perverting their evident meaning and intent, it is the duty of the courts to do so, thus reconciling them and according to them concurrent effect. [Citations omitted.]' *Shanley* v. *Jankura,* 144 Conn. 694, 702, 137 A.2d 536 (1957)." *Metropolitan District* v. *Barkhamsted,* supra, 63–64. The Appellate Court concluded that "[r]ather than an essential repugnancy, the two methods of assessment can live together com-

patibly as two different but related methods of achieving the same objective." Id., 64. The charter has independent application with respect to the water supply land of the district, while General Statutes § 12-76 is applicable to any other municipal water company or municipality owning water supply land. Id., 64; see *Baker* v. *Baningoso,* 134 Conn. 382, 385, 58 A.2d 5 (1948); *Lamberti* v. *Stamford,* 131 Conn. 396, 401, 40 A.2d 190 (1944).

We agree with the Appellate Court that there is "nothing in the legislative history of the charter and General Statutes § 12-76 to display a manifest intent that the charter provision is repealed by the later general statute." *Metropolitan District* v. *Barkhamsted,* supra, 64. Because the charter and General Statutes § 12-76 can logically be given concurrent application, the charter provision was not repealed by implication in the adoption of the 1963 amendment to General Statutes § 12-76. Under the charter, the assessment standard is not the fair market value of the district's land as "improved farmland" based upon the value of land outside Barkhamsted but the actual average assessment used for improved farmland in the town. In light of our conclusions, we agree with the Appellate Court that this case must be remanded for a determination of the average assessed valuation of the "improved farmland" located within the town of Barkhamsted in order to compute properly the district's tax liability.

The judgment of the Appellate Court is affirmed.

In this opinion the other judges concurred.