# VINCENZO VERNA ET AL. *v.* COMMISSIONER OF REVENUE SERVICES
## (SC 16563)

Sullivan, C. J., and Borden, Norcott, Katz and Vertefeuille, Js.

Argued March 12—officially released July 30, 2002

*John F. Conway*, with whom was *W. Glen Pierson*, for the appellants (plaintiffs).

*Jonathon L. Ensign*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Edward F. Reynolds, Jr.*, for the appellee (defendant).

*Opinion*

SULLIVAN, C. J. This appeal requires us to construe the term "unimproved land" for the purposes of levying a real estate conveyance tax pursuant to General Statutes § 12-494.[1] The trial court concluded that the demoli-

[1] General Statutes § 12-494 provides: "(a) There is imposed a tax on each deed, instrument or writing, whereby any lands, tenements or other realty is granted, assigned, transferred or otherwise conveyed to, or vested in, the purchaser, or any other person by his direction, when the consideration for the interest or property conveyed equals or exceeds two thousand dollars, (1) subject to the provisions of subsection (b) of this section, at the rate of five-tenths of one per cent of the consideration for the interest in real property conveyed by such deed, instrument or writing, the revenue from which shall be remitted by the town clerk of the municipality in which such tax is paid, not later than ten days following receipt thereof, to the Commissioner of Revenue Services for deposit to the credit of the state General Fund and (2) at the rate of eleven one-hundredths of one per cent of the consideration for the interest in real property conveyed by such deed, instrument or writing, which amount shall become part of the general revenue of the municipality in accordance with section 12-499.

"(b) The rate of tax imposed under subdivision (1) of subsection (a) of this section shall, in lieu of the rate under said subdivision (1), be imposed on certain conveyances as follows: (1) In the case of any conveyance of real property which at the time of such conveyance is used for any purpose other than residential use, except unimproved land, the tax under said subdivision (1) shall be imposed at the rate of one per cent of the consideration for the interest in real property conveyed; and (2) in the case of any conveyance in which the real property conveyed is a residential estate, including a primary dwelling and any auxiliary housing or structures, for which the consideration in such conveyance is eight hundred thousand dollars or more, the tax under said subdivision (1) shall be imposed (A) at the rate of one-half of one per cent on that portion of such consideration up to and including the amount of eight hundred thousand dollars and (B) at the rate of one per cent on that portion of such consideration in excess of eight hundred thousand dollars; and (3) in the case of any conveyance in which real property on which mortgage payments have been delinquent for not less than six months is conveyed to a financial institution or its subsidiary which holds such a delinquent mortgage on such property, the tax under said subdivision (1) shall be imposed at the rate of one-half of one per cent of the consideration for the interest in real property conveyed."

tion of an industrial building and the abatement of pollution on the property constituted improvements to the real property of the plaintiffs, Vincenzo Verna and Patricia Verna, and, therefore, that the plaintiffs were not entitled to the conveyance tax rate for unimproved land under § 12-494. We affirm the judgment of the trial court on the alternate ground that the blockhouse[2] that remained on the land at the time of its conveyance constituted an improvement to the real property and, therefore, that the plaintiffs' property was not unimproved land for purposes of § 12-494.

The following facts and procedural history are undisputed. The plaintiffs for many years owned a seventeen acre parcel of land in Wallingford, on which a 130,000 square foot industrial building and a separate blockhouse were situated. Sometime prior to June 27, 1995, the plaintiffs entered into an agreement to sell the property to a developer who intended to construct a commercial building on the site. As part of that agreement, the plaintiffs were required to remove all of the existing improvements, including the industrial building, at the developer's expense. Accordingly, by June 27, 1995, the plaintiffs had removed all improvements[3] except the blockhouse, which the department of environmental protection (department) was using to monitor environmental cleanup efforts and to store equipment. On June 27, 1995, the plaintiffs conveyed the property to the developer for the sum of $6,000,000. They also tendered a conveyance tax of $30,000 on the full amount of the purchase price to the defendant, the commissioner of revenue services (commissioner). That tax was calculated as provided in § 12-494 (a) (1) pertaining to unim-

---

[2] Although there is no definitive description of the blockhouse in the record, Merriam-Webster's Collegiate Dictionary (10th Ed. 1993) defines a blockhouse as a reinforced concrete building. The parties referred to the blockhouse as a "blockhouse," "shed" or "blockhouse shed."

[3] Those improvements included the industrial building and its foundation, an asphalt parking lot and underground tanks.

proved land. The commissioner subsequently audited the conveyance and determined that the conveyance should have been taxed as provided in § 12-494 (b) (1) pertaining to improved real property that, at the time of conveyance, was used for nonresidential purposes. Accordingly, the commissioner assessed the plaintiffs an additional conveyance tax of $30,000, plus interest. The plaintiffs appealed from the assessment to the trial court.

The trial court concluded that the blockhouse was not an improvement to the plaintiffs' property and, thus, did not convert the property from unimproved to improved land for purposes of calculating the conveyance tax. The court reasoned that the blockhouse remained on the property at the time of conveyance solely for the convenience of the department. The trial court further concluded, however, that the plaintiffs' efforts in razing the industrial building and clearing the property of pollution were substantial improvements that increased the property's value and, therefore, that the plaintiffs' property was not unimproved land. The trial court rendered judgment dismissing the plaintiffs' appeal, from which the plaintiffs appealed to the Appellate Court. We transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

The plaintiffs claim that in concluding that the property did not qualify as unimproved land under § 12-494, the trial court improperly relied on outdated definitions of the terms "improved land" and "unimproved land" contained in the sixth edition of Black's Law Dictionary, published in 1990.[4] In the definition of "improved land"

---

[4] Black's Law Dictionary (6th Ed. 1990) defines "improved land" as "[r]eal estate whose value has been increased by landscaping and addition of sewers, roads, utilities, and the like." "Unimproved land" is defined as "[a] statutory term which includes lands, once improved, that have reverted to a state of nature, as well as lands that have never been improved." Id.

contained in the sixth edition, the concept of improvement is tied to an increase in property value as a result of development on the land. The plaintiffs claim that the trial court should have relied on the current edition of Black's Law Dictionary, the seventh edition, published in 1999, because the latest definitions of those terms do not depend on the subjective question of valuation.[5] The plaintiffs further claim that the legislature had intended the term "unimproved land" to mean vacant land or land without any structures at the time of conveyance, and, therefore, that the trial court improperly determined that the property was not unimproved land because, at the time of conveyance, the property had been cleared of all buildings and structures.[6]

Pursuant to Practice Book § 63-4,[7] the commissioner filed a statement of alternative grounds on which the judgment of the trial court could be affirmed. Specifically, the commissioner argues that the presence of the blockhouse on the property at the time of its conveyance was an improvement to the land and, therefore, that the plaintiffs were not entitled to the conveyance tax rate for unimproved land under § 12-494 (a) (1). We decide this appeal on the basis of the alternate ground for affirmance.

[5] Black's Law Dictionary (7th Ed. 1999) defines "improved land" as "[r]eal property that has been developed. The improvements may or may not enhance the value of the land." "Unimproved land" is defined as "1. Land that has never been improved. 2. Land that was once improved but has now been cleared of all buildings and structures." Id.

[6] Notwithstanding the plaintiffs' broad statement, they concede that the blockhouse was situated on the property at the time of conveyance and remained there for an additional three years following the conveyance.

[7] Practice Book § 63-4 (a) (1) provides in relevant part: "If any appellee wishes to (A) present for review alternative grounds upon which the judgment may be affirmed . . . that appellee shall file a preliminary statement of issues within twenty days from the filing of the appellant's preliminary statement of issues. . . ."

We begin our analysis by setting forth the relevant standard of review. "The scope of our appellate review depends upon the proper characterization of the rulings made by the trial court. To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. When, however, the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Pequonnock Yacht Club, Inc.* v. *Bridgeport*, 259 Conn. 592, 598, 790 A.2d 1178 (2002). The term "unimproved land" is not defined in the statutes, "but, whether defined or not, its meaning is a question of law." *Jeffrey* v. *Planning & Zoning Board of Appeals*, 155 Conn. 451, 454, 232 A.2d 497 (1967). The definition of the term "improvement" is, likewise, a pure question of law over which our review is plenary. We now turn to the merits of this appeal.

The plaintiffs claim that the trial court properly determined that the presence of the blockhouse did not render the property improved land because it served a temporary purpose, i.e., it was used by the department to monitor pollution abatement efforts prior to and following the sale and subsequently was demolished. Conversely, the commissioner contends that the blockhouse constituted an improvement that precluded the plaintiffs' property from being classified as unimproved land for purposes of § 12-494. We agree with the commissioner.

General Statutes § 12-494 (a) imposes "a tax on each deed, instrument or writing, whereby any lands, tenements or other realty is granted, assigned, transferred or otherwise conveyed to, or vested in, the purchaser . . . when the consideration for the interest or property conveyed equals or exceeds two thousand dollars, (1) . . . at the rate of five-tenths of one per cent of the

consideration for the interest in real property conveyed by such deed, instrument or writing . . . ." Subdivision (1) of subsection (b) of § 12-494 provides, however, that "[i]n the case of any conveyance of real property which at the time of such conveyance is used for any purpose other than residential use, *except unimproved land*, the tax under said subdivision (1) [of subsection (a)] shall be imposed at the rate of one per cent of the consideration for the interest in real property conveyed . . . ." (Emphasis added.) Thus, in determining whether the trial court properly concluded that the plaintiffs' property was not unimproved land, we must first determine whether the trial court properly concluded that the blockhouse did not constitute an improvement for purposes of § 12-494. We conclude that the blockhouse was an improvement to the plaintiffs' property.[8]

In *Grigerik* v. *Sharpe*, 247 Conn. 293, 306–307, 721 A.2d 526 (1998), we defined the term " 'improvement to real property' " in the context of interpreting General Statutes § 52-584a.[9] In that case, we stated that "[t]he phrase 'improvement to real property' is a phrase that has acquired a particular meaning in the law. Without attempting to define the phrase in all its possible nuances and applications, we have little difficulty in concluding that an 'improvement to real property,' as commonly understood in the law, '[g]enerally has refer-

---

[8] Because our determination that the blockhouse constituted an improvement to the plaintiffs' real property is dispositive of the issue on appeal, it is unnecessary for us to address the plaintiffs' claim that the trial court improperly determined that the removal of the industrial building and the pollution abatement efforts were improvements to the property.

[9] General Statutes § 52-584a (a) provides in relevant part: "No action or arbitration, whether in contract, in tort, or otherwise, (1) to recover damages (A) for any deficiency in the design, planning, contract administration, supervision, observation of construction or construction of, or land surveying in connection with, an *improvement to real property* . . . shall be brought against any architect, professional engineer or land surveyor . . . more than seven years after substantial completion of such improvement." (Emphasis added.)

ence to buildings, but may also include any permanent structure or other development [of the real property in question]' Black's Law Dictionary (6th Ed. 1990). Consistent with that understanding, we have defined an improvement to real property as an alteration or development of the property in order to enhance or promote its use for a particular purpose. *Metropolitan District* v. *Barkhamsted*, 199 Conn. 294, 302, 507 A.2d 92 (1986)." *Grigerik* v. *Sharpe*, supra, 306–307. Our conclusion in *Grigerik* is consistent with the definition of "improvement" found in the most recent edition of Black's Law Dictionary, the seventh edition, published in 1999. There, the term is defined as "[a]n addition to real property, whether permanent or not; [especially] one that increases its value or utility or that enhances its appearance." Black's Law Dictionary (7th Ed. 1999).

Our holding in *Grigerik* reflects a common understanding under the law that the term "improvement" encompasses buildings and other structures on real property. In the present case, the plaintiffs do not argue that the blockhouse is not a building or structure. Instead, the plaintiffs argue that the blockhouse remained on the property for the benefit of the department and not the owners. Such subjective reasons as to why the blockhouse remained on the plaintiffs' property are irrelevant, however, to the determination of what tax rate under § 12-494 should apply to the conveyance of a particular parcel of real property. In fact, in their brief the plaintiffs agree that "the tax rate applicable to be paid by the conveyor of real property is determined by the condition of the property at the time of conveyance." We conclude, therefore, that the blockhouse constituted an improvement to the plaintiffs' property at the time of conveyance.

We next consider the meaning of the term "unimproved land" in light of our conclusion that the term "improvement" encompasses the blockhouse. The term

"unimproved land" is not defined in § 12-494 or in any other statute. Thus, in construing the term, we look to its commonly approved usage. See General Statutes § 1-1 (a) ("[i]n the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language"); *Metropolitan District* v. *Barkhamsted,* supra, 199 Conn. 302–303 (applying dictionary definitions and common parlance of term "improve" in defining term "improved farmland"). The current edition of Black's Law Dictionary defines "unimproved land" as "1. Land that has never been improved. 2. Land that was once improved but has now been cleared of *all* buildings and structures." (Emphasis added.) Black's Law Dictionary (7th Ed. 1999). The previous edition of Black's Law Dictionary defined "unimproved land" as "[a] statutory term which includes lands, once improved, that have reverted to a state of nature, as well as lands that have never been improved."[10] Black's Law Dictionary (6th Ed. 1990).

The record reflects that the plaintiffs' property was improved and that the blockhouse, which we have determined is an improvement to the real property, remained on the property at the time of conveyance. Therefore, the plaintiffs' property does not fall within the definition of "unimproved land" in the most recent edition of Black's Law Dictionary. Furthermore, there is no indication in the record that the plaintiffs' property

---

[10] The plaintiffs contend that the legislative history of § 12-494 supports their argument that the legislature intended the term "unimproved land" to mean vacant land. Public Acts 1989, No. 89-251, § 19, amended § 12-494 by increasing the conveyance tax rate paid to the state and by providing a higher tax rate on conveyances of nonresidential property, except unimproved land. Specifically, the plaintiffs note the explanatory remark of Senator William A. DiBella that under the act, "[r]eal estate conveyance changes, residential and *vacant land* will go from .45 to .50 . . . ." (Emphasis added.) 32 S. Proc., Pt. 7, 1989 Sess., pp. 2459–60. We agree with the plaintiffs that Senator DiBella's brief remark is consistent with the definition of "unimproved land" in the two most recent editions of Black's Law Dictionary.

had reverted to a state of nature at the time of conveyance. Indeed, the record discloses that the property was being readied for new commercial development after having been used as an industrial site for many years. We conclude, therefore, that, irrespective of the subjective reasons for the presence of the blockhouse on the plaintiffs' property at the time of conveyance, its presence on the land rendered the property improved nonresidential land for purposes of levying the conveyance tax under § 12-494. We, therefore, affirm the judgment of the trial court on the alternate ground that the blockhouse was an improvement that rendered the plaintiffs' property improved land.

The judgment is affirmed.

In this opinion the other justices concurred.