JOSEPH PUTALA *v.* JUANINE S. DePAOLO ET AL.
(14491)

CALLAHAN, BORDEN, BERDON, NORCOTT and KATZ, Js.

Argued January 14—decision released April 13, 1993

*Mary Rose Flaherty,* with whom was *Daniel A. Silver,* for the appellant (plaintiff).

*Robert A. Izzo* and *John T. Nugent,* for the appellees (defendants).

CALLAHAN, J. The issue in this appeal is whether the plaintiff, Joseph Putala, was entitled to be declared the winner, in the 1991 Southington municipal elections, of one of two vacancies on the Southington board of finance. The plaintiff claimed that he was so entitled and that he had been wrongfully deprived of his seat on the board by the defendants, the election officials of the town of Southington. He subsequently filed a complaint pursuant to General Statutes § 9-328 to enforce his claim to office.[1] The trial court concluded

---

[1] "[General Statutes] Sec. 9-328. CONTESTS AND COMPLAINTS IN ELECTION OF MUNICIPAL OFFICERS AND NOMINATION OF JUSTICES OF THE PEACE. Any elector or candidate claiming to have been aggrieved by any ruling of any election official in connection with an election for any municipal office or a primary for justice of the peace, or any elector or candidate claiming that there has been a mistake in the count of votes cast for any such office at such election or primary, or any candidate in such an election or primary claiming that he is aggrieved by a violation of any provision of sections 9-355, 9-357 to 9-361, inclusive, 9-364, 9-364a or 9-365 in the casting of absentee ballots at such election or primary, may bring a complaint to any judge of the superior court for relief therefrom. In any action brought pursuant to the provisions of this section, the complainant shall send a copy of the complaint by first-class mail, or deliver a copy of the complaint by hand, to the state elections enforcement commission. If such complaint is made prior to such election or primary, such judge shall proceed expeditiously to render judgment on the complaint and shall cause notice of the

that the defendants had correctly interpreted the Southington town charter and had properly awarded one of two vacancies on the board of finance to a candidate who had received fewer votes than the plaintiff. We agree.

hearing to be given to the secretary of the state and the state elections enforcement commission. If such complaint is made subsequent to such election or primary, it shall be brought within ten days of such election or primary to any judge of the superior court, in which he shall set out the claimed errors of the election official, the claimed errors in the count or the claimed violations of said sections. Such judge shall forthwith order a hearing to be had upon such complaint, upon a day not more than five nor less than three days from the making of such order, and shall cause notice of not less than three nor more than five days to be given to any candidate or candidates whose election or nomination may be affected by the decision upon such hearing, to such election official, the secretary of the state, the state elections enforcement commission and to any other party or parties whom such judge deems proper parties thereto, of the time and place for the hearing upon such complaint. Such judge shall, on the day fixed for such hearing and without unnecessary delay, proceed to hear the parties. If sufficient reason is shown, he may order any voting machines to be unlocked or any ballot boxes to be opened and a recount of the votes cast, including absentee ballots, to be made. Such judge shall thereupon, if he finds any error in the rulings of the election official or any mistake in the count of the votes, certify the result of his finding or decision to the secretary of the state before the tenth day succeeding the conclusion of the hearing. Such judge may order a new election or primary or a change in the existing election schedule. Such certificate of such judge of his finding or decision shall be final and conclusive upon all questions relating to errors in the ruling of such election officials, to the correctness of such count, and, for the purposes of this section only, such claimed violations, and shall operate to correct the returns of the moderators or presiding officers, so as to conform to such finding or decision, except that this section shall not affect the right of appeal to the supreme court and it shall not prevent such judge from reserving such questions of law for the advice of the supreme court as provided in section 9-325. Such judge may, if necessary, issue his writ of mandamus, requiring the adverse party and those under him to deliver to the complainant the appurtenances of such office, and shall cause his finding and decree to be entered on the records of the superior court in the proper judicial district."

The defendants claimed that the trial court improperly denied their motion to dismiss the plaintiff's complaint under General Statutes § 9-328 for lack of jurisdiction because of the failure of the plaintiff timely to serve certain parties. We have reviewed this claim and find it unpersuasive. See *Six Carpenters, Inc.* v. *Beach Carpenters Corporation,* 172 Conn. 1, 6, 372 A.2d 123 (1976).

On November 5, 1991, a general election for municipal offices was held in the town of Southington. Included were contests for two six year terms and one truncated unexpired term on the Southington board of finance. The Southington board of finance consists of six members who serve six year terms. Two of the six members of the board run for reelection on a staggered basis every two years. 24 Spec. Acts 589, No. 153, § 1 (1945), see footnote 5; Southington town charter § 202 (e), see footnote 9.

In 1991, of the three members of the board whose seats were not contested in the November election, two were Democrats and one was a Republican. A Democrat, Christine A. Shanley, was elected to fill the unexpired term on the board.[2] The board at that point had as members three Democrats and one Republican.

A Republican candidate, Leonard Marcheselle, received the highest number of votes in the election from among the five candidates for the two six year terms on the board. The next highest number of votes was obtained by the plaintiff, who is a Democrat. The third highest number of votes was garnered by Jeanne C. Carey, a Republican.

The defendant election officials, Juanine S. DePaolo, the Southington town clerk, and Susan Elshire, the election moderator, declared Marcheselle, who received the highest number of votes, elected to one of the two six year terms on the board.[3] At that point the board had a complement of three Democrats and two Republicans. The defendants then declared Carey, the Republican, who had received the third highest number of votes in the election, the winner of the second six year

---

[2] The election moderator and the town clerk ruled that the unexpired term on the board should be filled prior to filling the two full-term vacancies. That ruling has not been contested.

[3] That decision is not challenged.

term on the board, rather than the plaintiff, who had received the second highest vote total.

The defendants claim that they were required to award the second full term to Carey rather than the plaintiff by § 2 of Special Act No. 411 (1931), as amended by § 1 of Special Act No. 153 (1945). Those special acts, the defendants contend, mandate that the Southington board of finance be bipartisan and that it be composed of three members of each of the two leading political parties. They argue, therefore, that they had no choice but to declare Carey, rather than the plaintiff, the winner of the second full term on the board.

Section 2 of Special Act No. 411 (1931) established a six member board of finance for Southington, the board to be composed of three members of each of the two leading political parties receiving the highest number of votes in an annual election.[4] Section 1 of Special Act No. 153 (1945) amended § 2 of Special Act No. 411 to provide for staggered six year terms for the members of the board, two seats to be contested every two years. Special Act No. 153 did not, however, contemplate a change in the bipartisan nature of the board.[5] Section 1 of Special Act No. 153 provided in pertinent part that, once staggered terms were estab-

_____

[4] Special Act No. 411 (1931) provides in relevant part: "AN ACT CREATING A BOARD OF FINANCE IN THE TOWN OF SOUTHINGTON. . . .

"SEC. 2. At the annual town meeting of said town to be held on the first Monday in October, 1931, and annually thereafter, said town shall elect in the manner in which other town officers are elected, six electors of said town as members of said board of finance. No person, at such election, shall vote for more than four members of said board. Of the total number of members so voted for the three receiving the highest number of votes on each of the tickets of the two leading parties shall be elected members of said board of finance. The members of the board so elected shall hold office for one year from the date of their election and until their successors shall be elected and shall have qualified."

[5] Special Act No. 153 (1945) provides in relevant part: "AN ACT AMENDING AN ACT CREATING A BOARD OF FINANCE IN THE TOWN OF SOUTHINGTON.

"SECTION 1. Section 2 of an act creating a board of finance in the town of Southington, approved May 19, 1931, is amended to read as follows: At

lished: "Biennially thereafter, each of the leading political parties shall nominate not fewer than two candidates to hold office for a term of six years from the date of their election and until their successors have been elected and have qualified, to be voted for at such biennial election. No person at such election shall vote for more than two members of said board. Of the total number of members so voted for, the one receiving the highest number of votes on each of the tickets of the two leading political parties shall be elected to said board."

The plaintiff and the defendants stipulated that Special Act No. 411 created a six person bipartisan board of finance for the town of Southington. They also agree in their briefs that the effect of Special Act No. 153 was to create staggered six year terms for members of the board but that Special Act No. 153 did not purport to and was not intended to change the bipartisan composition of the board. The plaintiff claims, however, that both special acts were superseded in 1966, when Southington adopted a town charter pursuant to the

the biennial town meeting of said town to be held on the first Monday in October, 1946, said town shall elect, in the manner in which other town officers are elected, six electors of said town as members of said board of finance, two for a term of two years from the first Monday in October, 1946, two for a term of four years from said date and two for a term of six years from said date, and biennially thereafter said town shall elect two members of said board for a term of six years. Each of the leading political parties shall nominate not fewer than two candidates for each of said terms of office to be voted for at such election to be held on the first Monday in October, 1946, and no person at such election shall vote for more than two members of said board for each of said terms of office. Of the total number of members so voted for, the one receiving the highest number of votes for each of said terms of office on each of the tickets of the two leading political parties shall be elected to said board. Biennially thereafter, each of the leading political parties shall nominate not fewer than two candidates to hold office for a term of six years from the date of their election and until their successors have been elected and have qualified, to be voted for at such biennial election. No person at such election shall vote for more than two members of said board. Of the total number of members so voted for, the one receiving the highest number of votes on each of the tickets of the two leading political parties shall be elected to said board."

Home Rule Act, General Statutes §§ 7-187 through 7-201. See *Caulfield* v. *Noble,* 178 Conn. 81, 85, 420 A.2d 1160 (1979). He points out that the Southington charter incorporated § 9-167a of the General Statutes, the minority representation statute, as § 204 of the charter.[6] He maintains that as a result, pursuant to § 204 of the charter, a municipal board comprised of six members may have a maximum of four members of the same political party.[7] The plaintiff argues, there-

---

[6] Section 204 of the Southington town charter provides: "MINORITY REPRESENTATION.

"Minority representation on any elective or appointive board, council, commission, committee or similar body of the town shall be determined in accordance with the provisions of section 9-167a of the General Statutes, Revision of 1958, as amended. As provided in said section, the maximum number on any such board, commission, committee or similar body who may be members of the same political party shall be as specified in the following table:

| Total Membership | Maximum From One Party |
| --- | --- |
| 3 | 2 |
| 4 | 3 |
| 5 | 4 |
| 6 | 4 |
| 7 | 5 |
| 8 | 5 |
| 9 | 6 |
| More than 9 | Two-thirds of total membership" |

[7] "[General Statutes] Sec. 9-167a. MINORITY REPRESENTATION. (a) (1) Except as provided in subdivision (2) of this subsection, the maximum number of members of any board, commission, legislative body, committee or similar body of the state or any political subdivision thereof, whether elective or appointive, who may be members of the same political party, shall be as specified in the following table:

| COLUMN I Total Membership | COLUMN II Maximum from One Party |
| --- | --- |
| 3 | 2 |
| 4 | 3 |
| 5 | 4 |
| 6 | 4 |
| 7 | 5 |
| 8 | 5 |
| 9 | 6 |
| More than 9 | Two-thirds of total membership |

fore, that in 1991, the Southington board of finance was no longer required to be bipartisan but could properly

"(2) The provisions of this section shall not apply (A) to any such board, commission, committee or body whose members are elected wholly or partially on the basis of a geographical division of the state or political subdivision, (B) to a legislative body of a municipality (i) having a town meeting as its legislative body or (ii) for which the charter or a special act, on January 1, 1987, provided otherwise or (C) to the city council of an unconsolidated city within a town and the town council of such town if the town has a town council and a representative town meeting, the town charter provides for some form of minority representation in the election of members of the representative town meeting, and the city has a city council and a body having the attributes of a town meeting or (D) to the board of directors and other officers of any district, as defined in section 7-324, having annual receipts from all sources not in excess of two hundred fifty thousand dollars.

"(b) Prior to any election for or appointment to any such body, the municipal clerk, in cases of elections, and the appointing authority, in cases of appointments, shall determine the maximum number of members of any political party who may be elected or appointed to such body at such election or appointment. Such maximum number shall be determined for each political party in the following manner: From the number of members of one political party who are members of such body at the time of the election or appointment, subtract the number of members of such political party whose terms expire prior to the commencement of the terms for which such election or appointment is being held or made and subtract the balance thus arrived at from the appropriate number specified in column II of subsection (a) of this section.

"(c) In the case of any election to any such body the winner or winners shall be determined as under existing law with the following exception: The municipal clerk shall prepare a list of the candidates ranked from top to bottom according to the number of votes each receives; when the number of members of any one political party who would be elected without regard to this section exceeds the maximum number as determined under subsection (b) of this section, only the candidates of such political party with the highest number of votes up to the limit of such maximum shall be elected, and the names of the remaining candidates of such political party shall be stricken from the list. The next highest ranking candidates shall be elected up to the number of places to be filled at such election.

"(d) If an unexpired portion of a term is to be filled at the same time as a full term, the unexpired term shall be deemed to be filled before the full term for purposes of applying this section. At such time as the minority representation provisions of this section become applicable to any board, commission, committee or body, any vacancy thereafter occurring which

have seated four members of a single political party. He argues that, consequently, the charter and the results of the November, 1991 election, wherein he received the second highest number of total votes, dictate that he be declared the winner of the full six year term on the board that he contends was erroneously awarded to the Republican, Carey. We disagree.

The plaintiff's claim requires that we construe § 204 of the Southington town charter in the context of the charter as a whole "with a view toward reconciling its parts in order to obtain a sensible and rational overall interpretation." *Nicotra Wieler Investment Management, Inc.* v. *Grower,* 207 Conn. 441, 451, 541 A.2d 1226 (1988); *State* v. *Torres,* 206 Conn. 346, 355, 538 A.2d 185 (1988); *Dukes* v. *Durante,* 192 Conn. 207, 214, 471 A.2d 1368 (1984). Section 1102 of the Southington town charter provides in relevant part: "As of the effective date of this Charter all General Laws and Special Acts applying to the town, all ordinances and bylaws of the town, and all rules and regulations of commissions, boards, departments and agencies of the town

is to be filled by appointment shall be filled by the appointment of a member of the same political party as that of the vacating member.

"(e) Nothing in this section shall be construed to repeal, modify or prohibit enactment of any general or special act or charter which provides for a greater degree of minority representation than is provided by this section.

"(f) Nothing in this section shall deprive any person who is a member of any such body on July 1, 1960, of the right to remain as a member until the expiration of his term.

"(g) For the purposes of this section, a person shall be deemed to be a member of the political party on whose enrolment list his name appears on the date of his appointment to, or of his nomination as a candidate for election to, any office specified in subsection (a) of this section, provided any person who has applied for erasure or transfer of his name from an enrolment list shall be considered a member of the party from whose list he has so applied for erasure or transfer for a period of six months from the date of the filing of such application and provided further any person whose candidacy for election to an office is solely as the candidate of a party other than the party with which he is enrolled shall be deemed to be a member of the party of which he is such candidate."

shall continue in force, except insofar as they are inconsistent with the provisions of this Charter, until they are amended or repealed by ordinance of the council or the appropriate body having jurisdiction. All Special Acts or parts of acts relating to the town inconsistent with the provisions of this Charter are repealed."

The plaintiff does not claim that Special Acts Nos. 411 and 153 have been expressly amended or repealed by the town council or another appropriate body. He argues, rather, that Special Acts Nos. 411 and 153 have been repealed by implication because they are inconsistent with the provisions of General Statutes § 9-167a, the minority representation statute, that has been incorporated into the Southington town charter via § 204 of the charter. The plaintiff's claim that the Special Acts are inconsistent with the charter and have been repealed by implication is unfounded.

Section 204 of the Southington charter incorporated § 9-167a of the General Statutes into the charter in its entirety. Subsection (e) of § 9-167a provides: "Nothing in this section shall be construed to repeal, modify or prohibit enactment of any general or special act or charter which provides for a greater degree of minority representation than is provided by this section." Consequently, Special Acts Nos. 411 and 153, which provide greater minority representation than General Statutes § 9-167a, are not inconsistent with the Southington charter but in fact have had their lives extended by the charter.

Moreover, several tenets of statutory construction militate against the plaintiff's position. It is well established that repeal of the provisions of a prior legislative enactment by implication is not favored. *Metropolitan District* v. *Barkhamsted,* 199 Conn. 294, 305, 507 A.2d 92 (1986); *Southern Connecticut Gas Co.* v. *Housing Authority,* 191 Conn. 514, 521, 468 A.2d

574 (1983); *Powers* v. *Ulichny,* 185 Conn. 145, 153, 440
A.2d 885 (1981); *Hirschfeld* v. *Commission on Claims,*
172 Conn. 603, 606, 376 A.2d 71 (1977).

Repeal by implication will not be inferred if legisla-
tive acts can be reconciled and given concurrent effect.
*Metropolitan District* v. *Barkhamsted,* supra, 306;
*Shanley* v. *Jankura,* 144 Conn. 694, 702, 137 A.2d 536
(1957). That Special Acts Nos. 411 and 153 can be
reconciled and given concurrent effect with the provi-
sions of the charter is manifest. The Special Acts, relat-
ing to the election of the members of the board of
finance, not only do not conflict with the provisions of
the charter but the charter, by its terms, explicitly con-
templates their continued existence and efficacy as long
as they provide for greater minority representation
than required by § 204 of the charter. At the same time,
§ 204 is effective to establish, by charter, minimum
minority representation on boards and commissions
generally, as provided in § 9-167a, to ensure that their
political makeup conforms to state law.

Furthermore, Southington election officials have,
since the charter became effective in 1966, continued
to consider Special Acts Nos. 411 and 153 the opera-
tive law concerning the composition of the board of
finance. Consequently, they have routinely required the
election of a bipartisan board from the time of the
enactment of Special Act No. 411 in 1931, until 1991,
when the present controversy arose. Indeed, the plain-
tiff himself received the benefit of that interpretation
of the Special Acts and the charter in the municipal
election in 1985, when he was declared the winner of
a seat on the board of finance despite having received
fewer votes than two Republican candidates. "[T]he
interpretation of provisions of a city charter by the city
council or other town authorities has been given con-
siderable weight by courts construing and applying such
provisions. See *Burwell* v. *Board of Selectmen,* 178

Conn. 509, 518, 423 A.2d 156 (1979); see also *Castaneda v. Holcomb,* 114 Cal. App. 3d 939, 945–46, 170 Cal. Rptr. 875 (1981); *Van Cleve* v. *Wallace,* 216 Minn. 500, 508, 13 N.W.2d 467 (1944); *Morey Engineering & Construction Co.* v. *St. Louis Artificial Ice Rink Co.,* 242 Mo. 241, 261–62, 146 S.W. 1142 (1912); 2 E. McQuillin, Municipal Corporations (3d Ed. 1979) § 9.22, p. 686." *Pepe* v. *New Britain,* 203 Conn. 281, 291, 524 A.2d 629 (1987).

Finally, a radical departure from the long established policy of having a bipartisan board of finance will not be inferred without a clear indication that such a result was intended. *Nor'easter Group, Inc.* v. *Colossale Concrete, Inc.,* 207 Conn. 468, 481, 542 A.2d 692 (1988); *Gomeau* v. *Forrest,* 176 Conn. 523, 527, 409 A.2d 1006 (1979); *Jennings* v. *Connecticut Light & Power Co.,* 140 Conn. 650, 667, 103 A.2d 535 (1954). There is no discernible indication that the voters of Southington intended the demise of bipartisanship on the board of finance by adopting the charter in 1966. In fact, every indication in the charter is to the contrary. See Southington town charter § 1102 and § 204 (incorporating General Statutes § 9-167a [e]).

In order to support his position the plaintiff places great reliance on subsection (g) of § 202 of the Southington charter.[8] That subsection of § 202 concerns the election of members of the board of water commissioners and explicitly mandates that that board shall consist of six members, only three of whom shall

---

[8] Section 202 of the Southington town charter provides in pertinent part: "ELECTIVE OFFICERS.

"At each meeting of the town electors there shall be elected . . . (g) Three (3) members of the board of water commissioners which shall consist of six (6) members. Terms shall be for four (4) years for each term expiring in the year of the election. The membership of the board of water commissioners shall be limited to three (3) members from any one (1) political party. (11-3-70; 11-2-71; 7-23-84; 11-8-88)"

be members of any one political party. On the other hand, the plaintiff notes, § 202 (e) of the charter states only that two members of the board of finance shall be elected biennially for a term of six years.[9] He argues that if the drafters of the charter had intended that the board of finance remain bipartisan after the adoption of the charter, they would have used language similar to that used in § 202 (g) in drafting § 202 (e). We are unpersuaded.

Just as compelling an interpretation of subsections (e) and (g) of § 202 of the charter as that espoused by the plaintiff, is that the board of water commissioners was reconstituted as bipartisan by the charter when previously it had not been bipartisan.[10] The drafters of the charter, on the other hand, may well have believed that such language was unnecessary to establish the bipartisan composition of the board of finance because §§ 204 and 1102 of the Southington charter continued the existence and validity of Special Acts Nos. 411 and 153 that had already provided for a bipartisan board of finance. Further, there is nothing in the charter to which we have been directed or that we could locate to indicate that the number of members of the board of finance or the method of their selection was changed from that provided in Special Act No. 153. The drafters of the charter therefore apparently assumed the continued efficacy of Special Act No. 153 to maintain the membership of the board at six members serving staggered six year terms.

The judgment is affirmed.

In this opinion the other justices concurred.

---

[9] Section 202 of the Southington town charter provides in pertinent part: "ELECTIVE OFFICERS.

"At each meeting of the town electors there shall be elected . . . (e) Two (2) members of the board of finance for a term of six (6) years."

[10] That indeed appears to be the case. Special Act No. 468 (1901), which established the board of water commissioners to be effective upon the acquisition by the town of Southington of The Southington Water Company, did not require that the board, which as originally constituted had only three members, be bipartisan.