[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Plaintiff in this case, the International Brotherhood of Police Officers, Local 523 (IBPO), seeks an injunction requiring the defendant Town of Windsor Locks (town) to appoint Detective Sergeant Ricardo Rachele to the position of captain of the Windsor Locks Police Department. The town objects to this request.
The parties have filed a Joint Stipulation of Facts dated January 19, 1998. This joint stipulation recites, among other things, that following the administering of examinations, a list of six finalists was compiled in connection with an opening for CT Page 11154 the position of captain. One of the finalists was Detective Sergeant Rachele.
On June 22, 1998, a hearing was held. Edward E. Lanati, chairman of the Board of Police Commissioners, testified. He stated that candidates for the captain's position had been ranked by the police commission and that Ricardo Rachele was not ranked within the top three of the applicants, but was ranked in the top six. Transcript of testimony of Edward E. Lanati, at pages 4, 8.
Following additional argument on August 31, 1998, over objection, the Court permitted plaintiff to offer additional evidence in the form of various Windsor Locks Police Commission minutes. These minutes have now been reviewed.
This case presents two broad issues: first, whether the town charter supersedes Special Act 332, establishing a merit system for appointment and promotion within the police department; and second, if the merit system is applicable, whether plaintiff has satisfied its burden so as to obtain the injunctive relief it requests.
 I. Does the town charter supersede Special Act 332?
The town charter, adopted in 1981 and revised in 1993 pursuant to General Statutes § 7-188, affirmed the earlier acts in question, Special Acts 373 and 332, General Statutes § 7-276, and the subsequent departmental rules and regulations promulgated under these laws, and extended their lives.[1] See Putala v. DePaolo, 225 Conn. 378, 387,623 A.2d 989 (1993). Although General Statutes § 7-188 provides that a charter supersedes any special act inconsistent with it, in the present case, there is no substantial inconsistency between the earlier acts and the charter. The charter specifically adopts and incorporates these laws and it does not specifically amend or repeal any of the earlier acts in force as to appointments and promotions within the police department. The town's argument that the town charter does not incorporate Special Act 332, and the rules and regulations promulgated therefrom, fails.
Defendant's claim that the charter repeals Special Act 332 by implication also fails. "It is well established that repeal of the provisions of a prior legislative enactment by implication is not favored." Putala v. DePaolo, supra, 225 Conn. 387. "Repeal by implication will not be inferred if legislative acts can be reconciled and given concurrent effect." Id., 388. "[T]he rule is CT Page 11155 applicable to municipal ordinances as well as to state statutes." 6 E. McQuillin, Municipal Corporations (3d Ed. Rev. 1988) § 21.18, p. 271. The special acts and general statutes in question relating to the appointment and promotion of police officers are not in conflict with the provisions of the charter. Moreover, the charter, by its terms, affirms the special acts and explicitly contemplates their continued existence as long as they are not specifically repealed. There is no evidence in the record that the earlier acts have been repealed. The fact that a proposed charter revision which incorporated a revision of the merit system was voted down in 1986 tends to show that the act remained in force after the adoption of the charter. Nor is the merit system rendered obsolete by certain selected sections of the special act being superseded by inconsistent legislation. "An ordinance . . . which . . . amends only one section, and makes no reference to the subjects of the other sections of the former ordinance, does not repeal those sections by implication, where there is no repugnancy between the amended section and those sections which are left unamended." Id., § 21.19, p. 275. "[W]here the new charter authorizes an ordinance such as one in force and provides that existing ordinances shall remain in force until repealed, that ordinance remains in force." Id., § 21.26, p. 291.
Defendant's argument that the charter vests "sole" power for appointment and promotion with the board pursuant to General Statutes § 7-276 is unpersuasive. The town charter, as it incorporates General Statutes § 7-276 and Special Act 373, provides that the "sole" power is to be exercised "under such regulations as it adopts for the purpose," specifically, the department rules and regulations which, in turn, specifically reference the merit system. The court concludes that the town charter does not supersede Special Act 332, and that the appointment to the vacant position of captain is subject to the merit system pursuant to Special Act 332.
 II. Has Plaintiff demonstrated that it is entitled to injunctive relief?
In 1955, the town adopted Special Act 332, establishing a merit system for municipal employees pursuant to General Statutes § 7-407 of the Merit System Act, §§ 7-407 through 7-424. Pursuant to General Statutes § 7-276, Special Act 332 was CT Page 11156 specifically adopted into the police department rules and regulations for appointments to positions within that department.
Pursuant to §§ 7-413 and 7-414, the merit system for appointment to municipal positions established a system of civil service qualification examinations, wherein "appointment and promotion are based upon the results obtained in competitive examination." Waterbury v. Carusello, 39 Conn. Sup. 123, 126,471 A.2d 675 (1983). The purpose of a merit system is "to provide means for selecting and promoting each public official and employee upon the sole basis of his proven ability to perform the duties of his office or employment more efficiently than any other candidate. . ." (Internal quotation marks omitted.)Cassella v. Civil Service Commission, 202 Conn. 28, 38, n. 6,519 A.2d 67 (1987), citing General Statutes § 7-409. The object of providing examinations is to "secure more efficient employees, promote better government, eliminate as far as practicable the element of partisanship and personal favoritism, protect the employees and the public from the spoils system and secure the appointment to public positions of those whose merit and fitness have been determined by proper examination." (Internal quotation marks omitted.) New Haven Firebird Society v. Board of FireCommissioners, 32 Conn. App. 585, 592, 630 A.2d 131, cert. denied, 228 Conn. 902, 634 A.2d 295 (1993). Strict compliance with statutory provisions for civil service examinations is required to uphold the sanctity of the merit system. Cassella v.Civil Service Commission, supra, 202 Conn. 35; State v. AFSCME,13 Conn. App. 461, 467, 537 A.2d 517 (1988); Local 773 v.Bristol, 39 Conn. Sup. 1, 6, 463 A.2d 628 (1983). General Statutes Section 7-414 requires that a civil service position be filled from a list of the three candidates ("rule of three") who rank highest in open competitive examination for that position. See Hartford v. Board of Mediation Arbitration, 211 Conn. 7,10, n. 4, 557 A.2d 1236 (1989).
The town argues that Rachele is not entitled to the position of captain because he was not among the highest three candidates in order of rank, based on the results of the open competitive examinations given, from which appointment is made pursuant to § 3. The town argues that the appointment process and department rules and regulations as set forth in §§ 3 and 4 were followed.
The plaintiff argues that the higher position of captain is controlled by § 4, which requires that higher positions be CT Page 11157 filled "as far as practicable" by promotion, and that the rule requiring a candidate to have ranked in the top three positions in an examination is not applicable to appointments to these positions. The plaintiff argues that Rachele, as the only department employee among the candidates, should be appointed preferentially despite the fact that he was not among the highest three ranked candidates.
Special Act 332 § 3, which tracks General Statutes §7-414, specifically requires application of the rule of three to appointments based on ranking by results of open competitive examinations. Section 4 sets forth the process for promotion and requires that vacancies for higher positions within the department "be filled as far as practicable by promotion and based on open competitive examinations. . ." Section 4 does not specifically include the rule of three requirement as in section 3, nor does it provide further "rules governing promotional examinations [that] shall be established as hereinafter provided. . ." Special Act 332, § 4. However, § 4 does provide that "no position shall be required to be filled by promotion. . ." Because § 4 is unclear as to whether the town is required to apply the rule of three when there is a promotable candidate on the eligibility list, the issue is whether § 4 can be construed to incorporate the rule of three.
In order to determine the intent of §§ 3 and 4 of Special Act 332, it is necessary to look to well established principles of statutory construction. "A fundamental tenet of statutory construction is that statutes are to be considered to give effect to the apparent intention of the lawmaking body." (Internal quotation marks omitted.) Bridgeport Firefighters Assn. v. Cityof Bridgeport, 48 Conn. App., 667, 670, (1998); seeMurchison v. Civil Service Commission, 234 Conn. 35, 45,660 A.2d 850 (1995). "In seeking to discern that intent, we look to the words of the statute itself. . . " (Internal quotation marks omitted.) Id. "When the words of a statute are clear and unambiguous, we assume that the words themselves express the legislature's intent and there is no need to look further for interpretive guidance. . . Where there is ambiguity in the statute, however, we ascertain the actual intent by looking to the language of the statute itself, its legislative history, the circumstances surrounding its enactment and its purpose";Bridgeport Firefighters Assn. v. City of Bridgeport, supra,48 Conn. App. 670; as well as "to the legislative policy it was CT Page 11158 designed to implement, and to its relationship to existing legislation. . . In order to determine the meaning of a statute, we must consider the statute as a whole when reconciling its separate parts in order to render a reasonable overall interpretation." (Citation omitted; internal quotation marks omitted.) Murchison v. Civil Service Commission of the City ofWaterbury, supra, 234 Conn. 45.
Furthermore, principles of statutory construction require avoidance of "a construction that fails to attain a rational and sensible result that bears directly on the purpose the legislature sought to achieve. . . If there are two possible interpretations of a statute, we will adopt the more reasonable construction over one that is unreasonable." (Citation omitted.)Turner v. Turner, 219 Conn. 703, 713, 595 A.2d 297 (1991).
When promotions in office or public situation are "regulated by law, all promotions must be made in accordance with that law. . . Such provisions exist where a merit system has been established in the municipal service. . . When such rules exist, promotions must be made in accordance with them, otherwise they are invalid." 3 E. McQuillin, Municipal Corporations (3d Ed. Rev. 1990) § 12.131, p. 598. "The trial court must determine whether the commission has correctly interpreted its regulations and applied them with reasonable discretion to the facts." (Internal quotation marks omitted.) Gorman Construction Co. Inc.v. Planning Zoning Commission, 35 Conn. App. 191, 195,644 A.2d 964 (1994). The trial court reviews the commission's action "only to determine whether it was unreasonable, arbitrary or illegal."Schwartz v. Planning Zoning Commission, 208 Conn. 146, 152,543 A.2d 1339 (1988). In seeking injunctive relief, therefore, the plaintiff bears the burden of demonstrating that the town, by the actions of the board of police commissioners, acted improperly.Adolphson v. Zoning Board of Appeals, 205 Conn. 703, 707,535 A.2d 799 (1988).
In the present case, a review of the legislative history of Special Act 332 provides little insight into the legislative intent of this specific act, except in reference to General Statutes §§ 7-413 and 7-414 of the Merit System Act, which offers some guidance to resolve the seeming ambiguity at issue in the present case.[2]
The plain language of § 7-414 requires an open competitive examination for promotion, ranking of eligible CT Page 11159 candidates based upon test results, and appointment from among the three highest ranking candidates. Open competitive examination, as used in §§ 3 and 4, cannot in § 4 alone be construed so as to restrict examinees to promotable candidates only. Furthermore, § 4 requires open competitive examinations, and it does not provide for a ranking and eligibility system other than that in § 3. As discussed above, the purpose of holding examinations is to establish an eligibility list of ranked candidates. If it were not contemplated that appointment would be made from the highest ranked candidates, then the requirement of an examination would be unnecessary. It is therefore reasonable to assume that appointment would be made from a pool of the highest ranking candidates as set forth in § 3 absent specific language to the contrary. Reading §§ 3 and 4 together, in light of General Statutes § 7-414 and the public policy for requiring examinations, it is reasonable to construe § 4 as requiring application of the "rule of three" as well.
The plaintiff argues, referring to various Windsor Locks Police Commission minutes, that in the case of Detective Sergeant Rachele, the commission did not follow its own prior interpretation and implementation of Section 4, to Rachele's detriment. Applying the principle that "public officers, acting in their official capacity, are presumed, until the contrary appears, to have acted legally and properly," Meyer v. Collins,supra, 49 Conn. App. 831, 840, (1998), the burden is on the plaintiff to prove that the commission acted improperly or illegally. Adolphson v. Zoning Board of Appeals,supra, 205 Conn. 707. Moreover, "a city's past custom and practice of filling vacancies . . . may not create a binding legal obligation to follow the same procedure in the future;" 3 E. McQuillin, supra, § 12.79, p. 65; for the court is not bound by the legal interpretation of the act by the town.Northeast Parking v. Planning Zoning Commission,47 Conn. App. 284, 293, 703 A.2d 797 (1997), cert. denied, 243 Conn. 969,707 A.2d 1269 (1998). Nonetheless, if plaintiff were able to establish that the town failed to follow its own prior interpretation and implementation of Section 4 to Rachele's detriment, that would be relevant to the Court's analysis.
However, the plaintiff has failed to meet its burden of proof by failing to present evidence that the commission acted illegally, arbitrarily, or inconsistently, in order to overcome judicial construction of § 4. Review of the record, including the minutes of the Windsor Locks Police Commission, fails to CT Page 11160 demonstrate that the town has a pattern or practice of applying it's promotional rules and regulations in a manner inconsistent with their application in this case.
The party seeking injunctive relief must first demonstrate that: (1) he has no adequate legal remedy; (2) he would suffer irreparable injury absent a stay; (3) he is likely to prevail on the merits; and (4) the balance of the equities favors granting relief. Waterbury Teachers Assn. v. Freedom of InformationCommission, 230 Conn. 441, 446, 645 A.2d 978 (1994).
On the present record, for the reasons set out above, I conclude that plaintiff is unable to show a likelihood of success on the merits. Furthermore, the plaintiff has failed to show irreparable injury. "To sustain this burden, he must demonstrate that he is possessed of a juridic property interest, not simply an abstract need or desire for one or a unilateral expectation of one." Chambers v. Hew Haven, 31 Conn. Sup. 362, 369, 331 A.2d 347
(1974). The Chambers court held that "[t]he subjective expectancy of employment . . . is not such a recognized juridic property interest as can be irreparably injured"; id.; and denied the injunction sought.[3]
In conclusion, for the reasons stated above, plaintiff's request for injunctive relief is denied.
Douglas S. Lavine Judge, Superior Court