[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I.
In 1987, the plaintiff, Connie Bobbitt, sustained a back injury during the course of his employment and pursued a workers compensation claim. In December 1993, the plaintiff settled the claim, which had been transferred to the Second Injury Fund, by accepting a $112,500 structured settlement comprised of a $68,500 lump sum payment and $450 per month for ten years.
As an addendum to the settlement agreement, the parties agreed that the Second Injury Fund would purchase an annuity from SAFECO Life Insurance Company to discharge the Fund's obligation to make future payments. Paragraph 8 of this addendum provides: "[t]he periodic payments to be received by the [plaintiff] are not subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge or encumbrance by the [plaintiff]." Affidavit of Katherine A. Scanlon, Exhibit A, Settlement Agreement, Addendum, ¶ 8. The addendum also provided that the plaintiff would not "have the power to sell or mortgage or encumber same, or any part thereof, nor anticipate same, or any part thereof, by assignment or otherwise." Id., ¶ 5.
The addendum further provided that the Second Injury Fund would assign its liability under the settlement agreement to SAFECO National Life Insurance Company. Pursuant thereto, the parties entered into an assignment and release.[1] The assignment agreement, like the addendum to the settlement agreement, provided that the payments called for in the settlement agreement "may not be accelerated, deferred, increased, or decreased." Id., Exhibit B, Assignment Agreement, ¶ 4.
On or about January 28, 1999, Bobbitt, now fifty-four years old, entered into an agreement with Peachtree Settlement Funding (Peachtree) in which he attempted to assign his right to the remaining fifty-six monthly payments of $450 commencing June 28, 1999 through and including January 28, 2004 (totaling $25,200) for the sum of $14,000. The discount rate was disclosed as 23.28 percent and the difference between the scheduled payments and the purchase price would be $11,200. On March 26, 1999, the plaintiff filed this application for declaratory relief pursuant toP.A. 98-23 8, seeking this court's approval to transfer the structured settlement to Peachtree.
On April 16, 1999, the defendants, SAFECO Nationai Life Insurance Company and SAFECO Life Insurance Company, collectively objected to the plaintiffs application on a number of grounds. This objection is presently before the court.
 II. A.
The defendants first argue that the contracts between the parties specifically preclude the proposed assignment. The plaintiff argues that the court should not enforce the nonassignment provisions for statutory, common law and public policy reasons. First, the plaintiff asserts that the nonassignment clause is enforceable only if the defendants can show that it would materially change the duty or risk they assumed in connection with the settlement agreement. In support of this contention, the plaintiff cites 3 Restatement (Second), CT Page 11893 Contracts § 317(2)(a), pp. 14-15 (1981), which provides: "[a] contractual right can be assigned unless . . . the substitution of a right of the assignee for the right of the assignor would materially change the duty of the obligor, or materially increase the burden or risk imposed on him by his contract, or materially impair his chance of obtaining return performance, or materially reduce its value to him. . . ."
The plaintiff, however, fails to account for subdivision (c) of § 317(2), which adds that contractual rights are not assignable if "assignment is validly precluded by contract." See also Delacroix v. Lublin Graphics Inc., 993 F. Sup. 74, 81 (D. Conn. 1997). Thus, to the extent that the plaintiff relies on the Restatement (Second) of Contracts in support of his position, this court disagrees with his analysis.
Nonetheless, even if the contracts did not include the nonassignment provisions, this court is not convinced that the plaintiffs proposed assignment would not alter the defendants' burden or risk under the contract. While the plaintiff has simply brushed aside this issue, the defendants raise the clear possibility of negative tax consequences resulting from the plaintiffs proposed assignment.
In support of their position, the defendants cite the recent ruling in Grieve v. General American Life Ins. Co., United States District Court, Docket No. 2:98-CV-57 (D. Vt. June 8, 1999). The court in Grieve explains the potential tax consequences of permitting assignment of a structured settlement. As part of the Periodic Payment Settlement Act, 26 U.S.C. § 130 grants favorable tax treatment to an entity that undertakes the responsibility for making periodic payments. See footnote 1. In order to qualify for the tax benefits, the periodic payments must be "fixed and determinable as to amount and time of payment," cannot be "accelerated, deferred, increased, or decreased by the recipient" of the payments, and must be "excludable from the gross income of the recipient" under § 104[2] of the act. 26 U.S.C. § 130
(c)(2)(A)-(C). Thus, if periodic payments are assigned to a recipient who would not be entitled to exclude the sums received from its gross income under 26 U.S.C. § 104, the party responsible for making the payments might lose its eligibility for favorable tax treatment under 26 U.S.C. § 130. See Grieve v.General American Life Ins. Co., supra, United States District Court, Docket No. 2:98-CV-57; see also Johnson v. First ColonyLife Ins. Co., 26 F. Sup.2d 1227, 1229 (C.D. Cal. 1998) (holding that nonassignment provision was included in settlement agreement CT Page 11894 for benefit of party responsible for making payments — rather than for payee — in light of tax provisions); accord 145 Cong. Rec. S5284-85 (daily ed. May 13, 1999) (discussing a proposed change of the current tax scheme which would protect the favorable tax status of structured settlement payees in the event of a transfer of payment rights).
Although the Grieve court noted that it was not certain whether General American, the party responsible for making payments, would in fact suffer adverse tax consequences as a result of an assignment of payment rights, it concluded that such an assignment would certainly increase the risk to General American and reduce the value of the contract to it. See Grievev. General American Life Ins. Co., supra, United States District Court, Docket No. 2:98-CV-57. Accordingly, the court held that the nonassignment provision in the parties' settlement agreement was enforceable. See id.
This court is persuaded by the reasoning of Judge Sessions inGrieve. It may be true, as he said in Grieve, that "[t]he practical implications of this [tax] loss are open to speculation." Id. Nonetheless, this court is satisfied that the risk of suffering adverse tax consequences is surely increased if this court permits the plaintiff to assign the right to receive payments. While the plaintiff has attached an Internal Revenue Service Ruling concerning the tax implications to a claimant such as himself, the Ruling does not resolve any of the concerns of the defendants. The defendants surely do not have the burden of fully litigating this issue with the Internal Revenue Service; the Restatement only refers to a material increase in the burden or risk. The defendants have the right to bargain for contract terms to protect them against such risks. Ignoring the unambiguous nonassignment provision in the settlement agreement simply because the defendants might not ultimately suffer negative tax consequences is not justified.[3]
Furthermore, the plaintiff has not presented any public policy justification for voiding the nonassignment provision. InGrieve, the court noted that Congress, by enacting the Periodic Payment Settlement Act, was concerned with shielding victims and their families from being pressured to prematurely dissipate their recoveries. See id., quoting 145 Cong. Rec. S5283 (Daily Ed. May 13, 1999) (statement of Sen. Chafee). Sales of structured settlement payments for a lump sum also "directly contravene the intent and policy of Congress in enacting the special structured settlement tax rules." 145 Cong. Rec. S5283 (Daily Ed. May 13, CT Page 11895 1999) (statement of Sen. Chafee). Accordingly, it would be contrary to public policy to ignore the terms of the settlement agreement so as to permit the proposed assignee to take advantage of the plaintiffs current financial stress, particularly where the proposed transaction could ultimately place the plaintiff in greater financial distress in the future.[4] See Grieve v.General American Life Ins. Co., supra, United States District Court, Docket No. 2:98-CV-57, in which Judge Sessions noted: "As Grieve has stated, she is currently in substantial financial need. The Court is asked to enforce a transaction which will place her in significantly greater financial need, by cutting her income stream in half for the next fifteen years. Grieve, like any other citizen, is free to make arrangements which this Court might deem unwise. But this Court will not lend its approval to the voiding of unambiguous, bargained-for contract terms in order to enable Singer [the assignee] to profit, at an exorbitant rate of interest, from Grieve's financial distress." The plaintiff has failed to convince this court that it should not honor the parties' nonassignment provision for either common law or public policy reasons.
 B.
The plaintiff next argues that the nonassignment provision is invalid under the Article 9 of the Uniform Commercial Code. In particular, the plaintiff relies on General Statutes § 42a-9-318
(4), which provides: "[a] term in any contract between an account debtor and an assignor is ineffective if it [1] prohibits assignment of an account or [2] prohibits creation of a security interest in a general intangible for money due or to become due or [3] requires the account debtor's consent to such assignment or security interest." The plaintiff asserts that the settlement agreement is a general intangible, and therefore the nonassignment provision is ineffective.
The plaintiff misreads the language of § 42a-9-3 18(4). Section 42a-9-3 18(4) only invalidates contract clauses which prohibit assignments if the subject of the contract is an account. The term "account" is defined in General Statutes §42a-9-106 as "any right to payment for goods sold or leased or for services rendered which is not evidenced by an instrument or chattel paper, whether or not it has been earned by performance." This transaction does not involve an account.
Section 42a-9-318 (4) does apply to general intangibles; however, the only contractual prohibitions invalidated under § CT Page 1189642a-9-3 18(4) with respect to general intangibles are provisions that prohibit the creation of a security interest. The plaintiff does not assert that the transaction in question involves the creation of a security interest. Accordingly, the nonassignment provision is not invalidated by § 42a-9-318 (4)[5]
 III.
Regardless of whether, as a general proposition, the nonassignment provision is valid, the plaintiff contends that he may nonetheless assign his structured settlement payment rights on account of P.A. 98-238.
On June 8, 1998, the General Assembly enacted P.A. 98-238, which subsequently became effective on October 1, 1998. SeeP.A. 98-238, § 2. Paragraph (b) of § 1 of P.A. 98-238 provides, in pertinent part: "No transfer of structured settlement payment rights, either directly or indirectly, shall be effective by any payee domiciled in this state or by any payee entitled to receive payments under a structured settlement funded by an insurance contract issued by an insurer domiciled in this state or owned by an insurer or corporation domiciled in this state and no structured settlement obligor or annuity issuer shall be required to make any payment directly or indirectly to any transferee of any such transfer unless . . . (2) such transfer has been approved by a court pursuant to subsection (c) of this section." Section 1(c)(1) provides, in part: "Prior to any transfer, the payee entitled to receive payments under such structured settlement shall commence a declaratory judgment action under section 52-29 of the general statutes, for a determination as to whether the transfer of such structured settlement payment rights is in the best interests of the payee and is fair and reasonable to all interested parties under all of the circumstances then existing. . . . If the court determines, after hearing, that such transfer should be allowed, it shall approve such transfer upon such terms and conditions as it deems appropriate." The act defines "structured settlement" to include claims for periodic payments in settlement of a workers' compensation claim. SeeP.A. 98-238, § 1(a)(5).
Accepting that the nonassignment provision in the parties' settlement and assignment agreements is otherwise valid and enforceable, the plaintiff claims that P.A. 98-238 expressly allows for the transfer of any structured settlement upon court approval notwithstanding the existence of a contractual prohibition against assignment. CT Page 11897
In support of his argument, the plaintiff cites Rumbin v.Utica Mutual, Ins. Co., Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 064719 (March 2, 1999, Flynn, J.) (24 Conn. L. Rptr. 234). Rumbin appears to be the first and only opinion interpreting P.A. 98-238. The facts inRumbin were substantially similar to those in the present action; although there is no indication that the structured settlement in Rumbin stemmed from a workers' compensation claim, the structured settlement contract, as in the present action, expressly prohibited transfers. Nonetheless, the Rumbin court was persuaded that P.A. 98-238 was applicable and approved the plaintiffs proposed assignment notwithstanding the contractual prohibition. See id., 234-36.
In reaching its holding, the court in Rumbin first held that applying P.A. 98-238 in such circumstances would not violate the contract clause of the constitution of the United States, article one, § 10.[6] See id., 235-36. Next, the court analyzed the legislative history of P.A. 98-238 in an attempt to discern the legislature's intent. The court found various portions of the legislative history persuasive. During a hearing on an earlier version of the act which would have required the approval of the annuity company in addition to the approval of the court, the legislature expressed its concern that annuity companies would be unlikely to freely grant such approval for transfers or assignments. See id., 236, citing Conn. Joint Standing Committee Hearings, Judiciary, Pt. 3, 1998 Sess., pp. 730-31, remarks of Representative Bernhard. The legislature also expressed its understanding that structured settlement payees encounter emergencies in which transfers of payment rights for a lump sum become necessary. See Rumbin v. Utica Mutual Ins. Co., supra, 236, citing Conn. Joint Standing Committee Hearings, supra, pp. 727, 746, 757, 785. The Rumbin court was persuaded by such expressions that the legislature intended P.A. 98-238 to provide for a case-by-case review to insure that all parties' interests would be protected whether or not the structured settlement agreement contained a nonassignment clause. See Rumbin v. UticaMutual Ins. Co., supra, 236.
The defendants argue that the decision in Rumbin was erroneous and should not be followed, as it is only a trial level case. "Trial court cases do not establish binding precedent."McDonald v. Rowe, 43 Conn. App. 39, 43, 682 A.2d 542 (1996); see also Tanis v. Commission on Human Rights Opportunities, Superior Court, Judicial District of Stamford-Norwalk at CT Page 11898 Stamford, Docket No. 134702 (September 23, 1996, Maloney, J.) (17 Conn. L. Rptr. 607, 608) (declining to follow decision of another Superior Court, noting that other Superior Court decisions are not binding). Accordingly, while the decision in Rumbin is persuasive and must be considered, this court must conduct its own independent analysis of P.A. 98-238.
 A.
The defendants' argument that P.A. 98-238 does not apply to this transaction is twofold. First, the defendants argue thatP.A. 98-238 does not apply because the workers' compensation act forbids the assignment of workers' compensation benefits; see General Statutes § 31-320; and P.A. 98-238 does not expressly abrogate this statutory prohibition.
General Statutes § 31-320 provides, in relevant part: "[a]ll sums due for compensation under the provisions of this chapter . . . shall be nonassignable before and after award." Thus, looking solely at § 31-320, it would appear that the plaintiffs structured settlement, as it arises from a workers' compensation claim, would be nonassignable.
P.A. 98-238, however, expressly covers periodic payments in settlement of a workers' compensation claim in its definition of a "structured settlement". While P.A. 98-238 does not explicitly repeal § 31-320, the two provisions are inconsistent in regard to the assignability of workers' compensation claims. "It is well established that repeal of the provisions of a prior legislative enactment by implication is not favored." Putala v. DePaolo,225 Conn. 378, 387, 623 A.2d 989 (1993). "Nevertheless, it is a well established principle of statutory construction that subsequent enactments of the legislature are presumed to repeal earlier inconsistent ones to the extent that they are in conflict." Metropolitan District v. Barkhamsted, 199 Conn. 294, 305,507 A.2d 92 (1986). The prohibition of assignments of workers' compensation claims contained in § 31-320 would render that portion of the definition of "structured settlement" inP.A. 98-238, § 1(a)(5) pertaining to workers' compensation claims meaningless. "We presume that the legislature had a purpose for each sentence, clause or phrase in a legislative enactment, and that it did not intend to enact meaningless provisions."In re Baby Z., 247 Conn. 474, 522, 724 A.2d 1035 (1999).
The inconsistency of P.A. 98-238 and the workers' compensation act raises some doubt as to the true intent of the CT Page 11899 legislature, as there is no explicit repeal of the nonassignment provision of the workers' compensation act. It is possible that the General Assembly did not intend to do away with the prohibition against assignments of workers' compensation claims; in most states, the sale of workers' compensation benefits for a lump sum is explicitly prohibited. See, e.g., 145 Cong. Rec. S5284 (Daily Ed. May 13, 1999). Nonetheless, in light of the conflict and the established rules of statutory construction, this court feels constrained to hold that § 31-320 was implicitly repealed by the subsequent enactment of P.A. 98-23 8. Accordingly, the court cannot conclude that P.A. 98-238 does not apply to the present case on this basis.
 B.
The second argument the defendants advance is based on the nonassignment provisions in the settlement and assignment agreements. The defendants argue that P.A. 98-23 8 does not apply to transactions where the parties' settlement agreement prohibits assignments or transfers. The defendants assert that the language of the act does not clearly express the legislature's intent that the act operates so as to abrogate the defendants' contractual right to prohibit assignments.
In interpreting statutes, the court's "fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.)Nancy G. v. Department of Children and Families, 248 Conn. 672,683, A.2d (1999).
"It is an established rule of statutory construction that statutes are not readily interpreted as abrogating common-law rights. . . . It is also a rule of statutory construction that statutes in derogation of the common law are to be strictly construed. . . . No statute is to be construed as altering the common law, farther than its words import." (Citations omitted; internal quotation marks omitted.) State v. Nutrient,199 Conn. 537, 548, 508 A.2d 728 (1986); see also Castango v. Wholean,239 Conn. 336, 344, 684 A.2d 1181 (1996). "In determining whether or not a statute abrogates or modifies a common law rule the construction must be strict, and the operation of a statute in CT Page 11900 derogation of the common law is to be limited to matters clearly brought within its scope." (Internal quotation marks omitted.)Dodd v. Middlesex Mutual Assurance Co., 242 Conn. 375, 380,698 A.2d 859 (1997).
The parties do not dispute the fact that the settlement agreement contained a nonassignment provision. "It is the general rule . . . that persons shall have the utmost liberty of contracting and that their agreements voluntarily and fairly made shall be held valid and enforced in the courts." (Internal quotation marks omitted.) Konover Development Corp. v. Zeller,228 Conn. 206, 224, 634 A.2d 798 (1994). Nonassignment provisions are valid and enforceable under Connecticut law. See Lewin Sons, Inc. v. Herman, 143 Conn. 146, 149, 120 A.2d 423 (1956) (holding that nonassignment provision is valid and that assignment in violation thereof is voidable); Acton CATV, Inc. v.Wildwood Partners, Ltd., 19 Conn. App. 235, 236- 38, 561 A.2d 976
(1989) (upholding trial court's determination that assignment was invalid where contract contained nonassignment provision);Delacroix v. Lublin Graphics. Inc., supra, 993 F. Sup. 81 (holding that under Connecticut law, "a contract right is not assignable if assignment is precluded by the contract"). Accordingly, this court will not interpret P.A. 98-238 so as to invalidate contractual prohibitions of assignments unless it is clear that this was the legislature's intent.
Public Act 98-238 makes no mention, however, of contractual nonassignment provisions. The act does not provide that any structured settlement may be transferred so long as approval of a court is obtained. Rather, the act simply states that no transfer will be effective unless the court approves. There is no expression, clear or otherwise, of the intent to allow assignments of structured settlements where such assignments are contractually prohibited or that the enactment of P.A. 98-238
renders preexisting contractual assignment prohibitions void. The most reasonable interpretation of the language of P.A. 98-238 is that it imposes the requirement of court approval only upon proposed assignments of structured settlements which are otherwise allowed.
Because the language of P.A. 98-238 is not unclear, there is no need to look beyond the act's plain language or to apply rules of statutory construction. See, e.g., Rose v. Freedom ofInformation Commission, 221 Conn. 217, 225, 602 A.2d 1019 (1992) ("It is axiomatic that, where the statutory language is clear and unambiguous, construction of the statute by reference to its CT Page 11901 history and purpose is unnecessary."). Even so, in examining the legislative history, it is apparent that the legislature's intent is not expressed with the degree of clarity necessary to overcome the wording of P.A. 98-238. It is apparent from the legislative history that a proposed version of the bill was considered and rejected which would have granted annuity companies ultimate veto power. In addition, however, the judiciary committee considered the contrary possibility of adding language to the bill which would have allowed the court to make the final determination of whether to allow a transfer or assignment in all cases. See Conn. Joint Standing Committee Hearings, supra, pp. 729-32. From the language of the act which was ultimately passed, it is apparent that such a provision was not included. The record of the proceedings before the judiciary committee do contain some statements from which an inference may be drawn that the legislature intended P.A. 98-238 to override contractual nonassignment clauses. Nonetheless, analyzing the legislative history in its entirety, there is no distinct expression of such an intent.
This court respectfully declines to follow the analysis ofRumbin in interpreting P.A. 98-23 8. To the extent that Rumbin
stands for the proposition that judicial case-by-case review of proposed transfers of structured settlement payment rights would be wise, this court certainly agrees. Putting aside the contractual issue of nonassignability, this court is aware that emergency situations may arise in which allowing a transfer might be in the structured settlement payee's best interest. Nonetheless, this court may not by construction substitute "its own ideas of what might be a wise provision in place of a clear expression of legislative will." HUD/Barbour-Waverly v. Wilson,235 Conn. 650, 659, 668 A.2d 1309 (1995); see also Battersby v.Battersby, 218 Conn. 467, 470-71, 590 A.2d 427 (1991) ("[t]wo long-standing rules of statutory construction are that a court may not by construction supply omissions in a statute simply because it appears that good reasons exist for adding them . . . and that a court must construe a statute as it finds it, without reference to whether it thinks the statute would have been or could be improved by the inclusion of other provisions" (citation omitted)).
 IV.
In the present case, the settlement agreement validly prohibits the plaintiff from assigning the structured settlement to a third party. Accordingly, the defendants' objection is CT Page 11902 sustained.
Berger, Judge